# CHARLESTON.

### Ransom v. High et al.

(DENT, JUDGE, absent.)

Submitted September 13, 1893.—Decided April 1, 1893.

1. PARTITION—PLEADING.

In a bill in equity for partition it is not necessary for plaintiff to make formal deraignment of title or any deraignment further than is necessary to show how the parties became co-owners and are entitled to partition, describing and locating the premises, alleging that the parties hold the same together and undivided, giving the quantity of estate according to the fact, and the undivided interest, or show that which each is entitled to, making the proper parties, and praying for partition, etc.

2. PARTITION—COMMISSIONER IN CHANCERY.

When the action and report of the commissioners is excepted to on the ground that they have not set apart and assigned to any one his just and full share, unless it appear that the commissioners misunderstood or failed to perform some duty or acted on a wrong principle, the court will not sustain such exception, unless it be shown by a clear and decided preponderance of evidence that the commissioners have made an unequal and unfair partition.

3. A case in which these rules are discussed and applied.

KENNEDY, LITTLEPAGE & CHAPMAN for appellants.

H. C. & L. E. McWHORTER for appellee cited Code, c. 79, ss. 1, 2, 3, et seq.; 3 Rand. 361; Per. Tr. (2d Ed.) § 162; 1 Atk. 447; 2 Atk. 150; Id., 157; 1 Johns. Ch'y 329; 35 Md. 327; 19 N. J. Ch'y 123; 28 Cal. 632; 15 Mich. 94; 8 C. E. Green 60.

HOLT, JUDGE:

In November, 1889, plaintiff, N. B. Ransom, brought this

suit in equity in the Circuit Court of Kanawha county for partition between himself and defendant Mary C. High, wife of defendant Charles High, of a tract of land described in the title papers as containing one hundred and twelve acres, but found by actual survey in this case to contain only one hundred and eight and one half acres. The defendants having been served with process and not appearing, the Circuit Court, by decree of December 18, 1889, appointed three commissioners to go upon the land and divide the same into two parts, and set apart to plaintiff eight ninth parts, and to defendant Mary High one ninth. The commissioners went upon the land, made the partition and assignment, and reported to the court. Then defendants appeared, filing their demurrer and answer, plaintiff replying generally. The court overruled the demurrer and set aside the proceedings in partition by the commissioners, as far as they had gone, and by decree of April 1, 1891, again appointed the same commissioners to make partition, but this time they were directed to set apart and assign to defendant Mary C. High four twenty sevenths and to plaintiff twenty three twenty sevenths thereof. This order the commissioners executed and returned and filed a report and map showing the partition and assignment made by them in pursuance of this last decree. Defendant Mary C. High excepted to this report and partition, and, the cause coming on to be finally heard on June 30, 1891, the court overruled defendants exceptions, and confirmed the partition as made by the commissioners, and the defendants appealed.

Appellants assign three grounds of error:

1. The court erred in overruling the demurrer to the bill. Partition is made by statute and is a matter of right. Section 1, c. 79, Code. "Tenants in common, joint tenants and coparceners shall be compellable to make partition, and the Circuit Court of the county wherein the estate or any part thereof may be shall have jurisdiction in cases of partition, and in the exercise of such jurisdiction may take cognizance of all questions of law affecting the legal title, that may arise in any proceedings." This was taken from act of November 28, 1786, which compelled partition among joint tenants, as well as other co-owners, and gave the com-

mon-law writ *de partitione facienda* with forms adapted to the cases to be devised by the general court. See 1 Rev. Code 1819, p. 359.

In *Wiseley* v. *Findlay*, 3 Rand (Va.) 361–370 (1825) Judge GREEN says : "An application to a court of equity for partition does not seem to be an application to the sound discretion of the court, to be granted or refused according to the circumstances of the case, as in cases of specific performance and other cases, but to be due *ex debita justitiæ*. It is a remedy substituted for the difficult and perplexed remedy by writ of partition. I doubt whether a writ of partition has ever been prosecuted in Virginia. Indeed, the form of the writ has never been devised in the general court as the statute authorizing the writ directs. The only indispensible requisite to entitle the plaintiff to relief in such cases is that he shall show a clear legal title. If his title be disputed or doubtful, as if there be a question whether the deeds, under which he claims, are forged or not, or if his title depends on difficult and doubtful questions of law, which are emphatically proper for a court of law, the decree for partition is suspended until he establishes his title at law, not in a writ of partition, but by ejectment or other legal remedy; and if, in such proceeding, he establishes the genuineness of his title papers, or the question of law on which his title depends is decided in his favor, he returns to the court of equity, and partition is made according to his established rights."

This led, in the revisal of 1849, taking effect July 1, 1850, to the section just quoted, giving the court of equity jurisdiction to take cognizance of all such legal questions. See note of revisers of Code of 1849, p. 640, note 1, and other notes to same chapter. The proceeding to compel partition is described in Bract. (1 Tw. Bract. 569 *et seq.*): "When an inheritance descended to more than one heir, and they could not come to an agreement among themselves concerning the division of it, a proceeding might be instituted to compel partition. A writ was for this purpose directed to four or five persons who were appointed justices for the occasion, and were to extend and appreciate the lands by the oaths of good and lawful persons chosen by

the parties, who were called 'extensors,' and this extent was to be returned under their seals before the king or his justices. When partition was made in the king's court in pursuance of such extent there issued a *habere facias* (a writ of seisin) for each of the parceners to have possession." 2 Reeve, Eng. Law, 106 (Finlason); Freem. Coten. c. 11.

The elements of the proceeding as here given remain to this day even in the court of equity. For proceedings and judgments at common-law, see Booth, Real Act. p. 243, c. 8. Upon the subject generally, see *Agar* v. *Fairfax*, 2 White & T. Lead. Cas. Eq. (4th Ed.) p't 1, p. 865; *Pemberton* v. *Barnes*, L. R. 6 Ch. App. 685; *Id.* Brett, Lead. Cas. Mod. Eq. p. *45 and notes; 2 Beach, Mod. Eq. Jur. 1055–1072; 1 Pom. Eq. Jur. §§ 140–185, *et seq;* 1 Story, Eq. Jur. (13th Ed ) 654–668; Alln. Partit. passim (1834); especially the thorough and useful work of Mr. Freeman on Partition (2d Ed.) vol. 4, p't 2; Min. Inst. top page 1347, side page 1212; *Id.* p. 421; 2 Dan. Ch'y Pr. 134; Sand. Eq. 56–61, notes 571–575; 1 Bart. Ch'y Pr. § 99 *et seq.;* 1 Lomax, Dig. side pages 484–495; 1 Rob. Forms, 205–206; 3 Chit. Pl. 1390–1407; 17 Am. & Eng. Enc. Law. 660.

This bill alleges, in substance, that plaintiff and defendant Mary C. High hold in fee and undivided the tract of land of one hundred and twelve acres situated in Kanawha county, *etc.*—Mary C. High one ninth, and plaintiff the residue, eight ninths. Plaintiff gives the deraignment of title from the common source, viz., Madison Burdett, who died seised in fee, in 1864, leaving Mary C. High, James V. Burdett, and Nancy E. Burdett, who took as his children and heirs at law, leaving also his widow, Margaret L. Burdett. But such deraignment of title was neither customary nor necessary at common-law, and the practice and proceedings in equity were modeled on the proceedings of common-law; and such deraignment in equity is only used when and so far as necessary to show how the parties have come to be co-owners, and are entitled and to present some collateral or incidental preliminary question, or as matter of description of the real estate. See Freem. Coten. (2d Ed.) § 486 *et seq.; Stuart's Heirs* v. *Coalter*, 4 Rand (Va.) 74.

Plaintiff gives a sufficient description of the property sought to be partitioned by allegations and title papers exhibited and the respective size or amounts of the undivided interests. An allegation of a demand and refusal of partition is not made, nor is any necessary in equity (Freem. Coten. § 490); but plaintiff alleges and shows that he is entitled to partition, and prays that the same be made. Defendants' claim that plaintiff obtained no title under his purchase and deed from Woodall, trustee, is not tenable. Such deed passed to plaintiff the legal title, and the equitable ownership also, as far as we can see; but, if not the latter, it is a matter which does not concern the defendants. The demurrer was properly overruled.

Second error assigned: That the allegations of the bill are denied by the answer, and are not proved by the exhibits. The bill alleges, among other things, that after the death of her father, Madison Burdett, in 1864, Nancy E. Burdett, one of his three heirs at law, died in May, 1886, without issue, whereby defendant Mary C. High, as one of the heirs of Nancy, became and was invested with title to one third of one third, or one undivided ninth, part of said one hundred and twelve acres of land; so that the same is now held entirely by the said Mary and this plaintiff in the following proportion, viz., Mary C. High, one undivided one ninth, and this plaintiff eight undivided one ninth parts. Defendants, in their answer, "aver that the said Mary C. High is entitled to one ninth undivided interest in said real estate, as the heir of her said sister." If any further proof were needed on this point—and the allegation is defective—it is *secured* and helped out by the answer.

Third error assigned: That the court erred in overruling defendant's exceptions to commissioners' report. Nancy E. Burdett died, unmarried and intestate, in May, 1886, leaving no child nor descendants of any child, but leaving her mother, her brother James V. Burdett, and her sister, defendant Mary C. High, her heirs at law. Defendant Mary C. High and her husband had before that, viz. by deed dated 24th January, 1880, in consideration of five hundred dollars, sold and conveyed her interest (one third) in the real estate of which her father, Madison Burdett,

had died seised, to her mother, Margeret Burdett, and Margeret Burdett and her son, James V. Burdett, and wife, after the death of Nancy, and after the conveyance from defendant Mary C. High, by deed dated 8th September, 1887 conveyed the said one hundred and twelve acres, known as the "Madison Burdett Land," in Kanawha county, on the middle fork of Tupper's creek, describing it by adjoining owners, to E. A. Woodall, trustee, in trust, to secure to F. W. Miller the payment of one note executed and payable 1st September, 1888, for the sum of two hundred and twenty dollars, providing, in default of payment, for a sale to be made, etc. Under this trust-deed, Woodall sold the one hundred and twelve acres—apparently the whole of it; and plaintiff became the purchaser, at the price of two hundred and sixty five dollars, and the trustee by deed dated 27th April, 1889, conveyed the same to plaintiff, N. B. Ransom.

Before defendants had appeared, and while they were still in default, the Circuit Court, by decree of 18th December, 1889, appointed three commissioners to make partition. They made partition, and returned their report, which does not appear in this record. Then defendants appeared and filed this answer, claiming one ninth as the heir of their sister, Nancy, to which she had the legal title, and that they were also entitled equitably as such heir of Nancy to one third of one ninth, making their whole interest in the tract of one hundred and twelve acres four twenty sevenths.

The cause came on again to be heard in April, 1891, on papers formerly read, answer of defendants, and report of commissioners. Thereupon the court set aside the report, and again appointed the same commissioners to make partition, giving defendants all they claimed, and the commissioners made the same partition as they had made at first; and to this defendents excepted.

In this decree the court decides that defendant Mary C. High is the owner of and entitled to four twenty sevenths undivided interest in the one hundred and twelve acres, and that plaintiff is the owner of and entitled to twenty three twenty sevenths undivided interest in said land, and,

it appearing that both owners desire their interest in the land set apart to them, appoints the same three commissioners, who are directed to go upon the land and partition the same among the parties entitled thereto, if they find the land susceptible of partition in kind, and in the proportion to which said parties may be entitled; that is to say, that they set apart to plaintiff twenty three twenty sevenths of the said one hundred and twelve acres, and to the defendant Mary C. High four twenty sevenths thereof. In such partition said commissioners shall take into consideration the quantity and value of the several parts so to be set apart and assigned, so that each party shall receive an equitable proportion in value of said tract of land in the proportions aforesaid.

The commissioners made and returned their report, from which it appears that the tract contained, not one hundred and twelve, but one hundred and eight and one half acres. They set off by metes and bounds fifteen acres, as equal in value to four twenty sevenths of the whole, to defendant Mary C. High, and the remainder, ninety three and one half acres, to plaintiff, as being equal in value to twenty three twenty sevenths of the whole. It appears that under the first decree they had set off to Mary C. High this same fifteen acres as and for her one ninth or three twenty sevenths part. In their second report they call attention to this fact, and justify their change of opinion by the fact that since their first report a double log barn had been removed from the ninety three and one half acre part, and about two hundred panels of fence. But they say again in conclusion: "Your commissioners, after carefully considering the same, decided that the fifteen acres were fully equal in value to four twenty sevenths of the whole of the one hundred and eight and one half acres, as of 22 May, 1891, and that it is an equitable and just partition," *etc.*

Under this assignment, the first point made by the defendants is that the court erred in sending back the same commissioners. If the defendants had appeared in time, they had the same right to nominate and suggest to the court the persons from whom they wished the commissioners to be chosen that the plaintiff had; but, being once ap-

pointed, they are not removed, except for good and sufficient reason, unless by consent, so that the action of the court in that regard was proper, and according to the usual course.

The second point is that the commissioners did not again go upon the land at all, but took their old report, in which they had said that the fifteen acres was three twenty sevenths of the value of the one hundred and eight and one half acres, and now by the second report say that the same fifteen acres is equal to four twenty sevenths of said tract in value. As the jurors were always sworn in the real action at common-law, so are the commissioners in equity with us always sworn, and the report ought to show that fact; and the interlocutory decree for partition ought to direct that they be sworn before acting. It is usual to return a certificate of the oath taken with the report. The first report returned is not in the record. The second report, as copied in the record, contains no such certificate. If they were sworn in fact before acting, that is sufficient. No objection is made or exception taken on that ground, and it is fair to presume that they were sworn before acting. See *Massey* v. *Massey*, 4 Har. & J. 144; *McClanahan* v. *McClanahan* (14 S. W. Rep. 496) (1890); *Smith* v. *Moore*, 6 Dana, 417. See also, *Wilcox* v. *Cannon*, 1 Cold. 369; *Bledsoe* v. *Wiley*, 7 Humph. 507; *Jordan* v. *McNulty*, 14 Col. 280 (23 Pac. Rep. 460); *Winship* v. *Crothers*, 30 Ind. 455. See 4 Minor, Inst. p't 2, top page 1349; Sand. Eq.

In this report the commissioners say that, having gone upon the land, etc., under the first order, "they again, under the order of April 1, 1891, went upon the land on April 22, 1891, and, after carefully examining the same, laid off the fifteen acres on the lower end," etc., "as the portion we assigned to Mary C. High, being equal in value to four twenty sevenths parts of the whole," etc., thus stating explicitly that they again went upon the land. The question of ownership and what were the undivided shares or interests had been determined by decree of April 1, 1891. The commissioners had nothing to do but execute the order, make the partition and allotments according thereto, and return a report of what they had done, showing that the

property has been divided, and to whom the several parts have been assigned or allotted, returning with their report all the evidence taken or maps or deeds used and read and made.

The report of the commissioners is not final; it may be set aside by the court. But where the court is asked to set aside the action of the commissioners, on the ground that they erred in making allotments, whereby an unequal partition has been made, it will not grant the relief asked except in clear cases—cases in which the partition is based on wrong principles, or it is shown by a clear and decided preponderence of evidence that the commissioners have made a very unequal or unfair partition and allotment. See Freem. Coten. § 525, and cases cited.

Commissioners, when once they are appointed, no matter by whom nominated, are commissioners for all the parties, and owe to them and the court the duty of fairness and impartiality. See Alln. Partit. top page 46, side page 113. I do not see how the commissioners could have made a different partition than according to their opinion of value after going upon the ground the second time.

The court therefore did not err in overruling defendants' exceptions, and in confirming the partition reported and returned. By section 8, c. 117, of the Code, conveyances are no longer necessary to pass the legal title in suits in equity in partition. The record of partition, duly recorded in the county clerk's office, has the effect, but deeds are still frequently required and used, because they are generally more convenient muniments of title.

In conclusion, we are of opinion that the Circuit Court committed no substantial error in the orders and decrees complained of, and that they should be affirmed.

AFFIRMED.