# CHARLESTON.

WAMSLEY, *et al.* v. MILL CREEK COAL AND LUMBER COMPANY, *et al,* and YOKUM v. STALNAKER, *et al.*

Submitted June 17, 1904—Decided November 22, 1904.

1. COMMISSIONERS IN PARTITION—*Commissioner's Report—Exceptions—Notice.*

Although the statute does not, in terms, require notice to be given by commissioners in partition to the parties, yet the necessity of such notice must be implied, and an exception to the report for failure to give such notice will be sustained and the report set aside. (p. 304).

2. COMMISSIONERS REPORT.

It is not required that such commissioners should report the money value of the lands partitioned or of any share or lot thereof assigned by them.   (p. 306).

3. PARTITION—*Commissioners' Duties.*

In partitioning timber and coal lands, commissioners are not required to report the extent of coal deposits and the acreage, quantity and quality of timber, considered by them in arriving at their conclusion as to the relative value of the several parcels and shares assigned by them to the parties entitled thereto.   (p. 306).

Appeal from Circuit Court, Randolph County.

Action by Harriet S. Wamsley and others against the Mill Creek Coal & Lumber Company and others.   Decree for defendants, and plaintiffs appeal.

*Reversed.*

MELVILLE PECK and W. B. MAXWELL, for appellants.

C. W. DAILEY and TALBOTT & HOOVER, for appellees.

McWHORTER, JUDGE:

Hamilton Stalnaker departed this life, intestate, in 1892, leaving surviving him twelve children and the children of one deceased.   He died seized of several tracts of land among which were two tracts of wild lands containing in the aggregate two thousand three hundred and eighty-seven acres.   In 1894, Martha D. Yocum, one of the heirs-at-law of said Stalnaker, filed her bill in the circuit court of Randolph county, alleging that the said lands could not be partitioned in kind, and praying that the same might be sold under a decree of the court, and the proceeds divided among those entitled thereto.   Benjamin C. Stalnaker and nine other of the heirs of the said decedent filed their answer to Mrs. Yocum's bill, denying that the land was not susceptible of partition in kind, and praying that said interest of the plaintiff, Mrs. Yocum, in the wild lands, might be run off to her, and that the remainder might remain undivided. On the 24th of October, 1899 "It appearing to the court from the deed of conveyance of Martha D. Yocum, the plaintiff, and her husband, to Shelton L. Reger, trustee, that he has become the owner of her undivided interest in the land situate in this

county on Mill Creek, and described in the bill of the plaintiff, it is therefore ordered on motion of the said Reger, trustee, that this suit proceed to final decree in his name and at his proper costs." And it being shown that said Reger, trustee, had acquired nine other interests in said lands, a decree of partition was made appointing commissioners to go upon the lands. in the bill and proceedings mentioned, and partition the same, assigning to said Reger, trustee, for the purposes of his trust, ten-thirteenths thereof, and to the defendants, Boston Stalnaker, Harriet S. Wamsley, and Caroline H. Dilley, each one-thirteenth interest thereof, taking into consideration quantity,. quality, and value of lands so assigned, providing that if it could be conveniently done, they should assign the said Reger, trustee, his interest in one body, and to the other owners their interest separately, unless they should elect otherwise. On the sixth day of May, 1902, a decree was entered, filing a petition by the Mill Creek Coal & Lumber Company, showing that it had become the owner of eleven undivided thirteenths of the said two thousand three hundred and eighty-seven acres, and praying that the partition suit might proceed in its name and that commissioners be appointed to partition the said land between it and Boston Stalnaker and Harriet S. Wamsley in accordance with their respective interests, laying off to petitioner its eleven-thirteenths in one body adjoining other lands belonging to it, and the other two thirteenths be laid off separately to the said Boston Stalnaker and Harriet S. Wasmley, unless they should elect to have their interests laid off together in one body. The said decree of May 6, 1902, recited the fact that the said Mill Creek Coal and Lumber Company had shown itself entitled to eleven undivided thirteenths, and the said Stalnaker and Wamsley were each entitled to one undivided thirteenth of the said lands, and that the conditions as to the ownership of the said lands had been changed since the entry of the decree of October, 1899, and that no action had been taken under said decree. All proceedings under said decree were ordered stayed, and another decree of partition was entered in lieu thereof, directing James Coberly as surveyor, and F. M. White and K. B. Crawford commissioners appointed for that purpose to go upon the said two tracts of land situate upon Mill Creek and its branches, and treating them as one tract, partition the same.

between the parties entitled thereto, assigning to the Mill Creek. Coal and Lumber Company eleven-thirteenths, and to Stalnaker and Wamsley each one-thirteenth, taking into consideration quality and value of the land so assigned. On the 13th of July, 1903, the defendant, Harriet S. Wamsley, one of the heirs of Hamilton Stalnaker, and C. S. Wamsley, her husband, filed in the circuit court of Randolph county, their bill of complaint against the Mill Creek Coal and Lumber Company, the Tygarts River Lumber Company, W. S. Tolbard and Boston Stalnaker, alleging that the Mill Creek Coal and Lumber Company had acquired the fee simple title to the undivided eleven-thirteenths. of the said two thousand three hundred and eighty-seven acres of land by purchasing the interests of all the heirs except those of the plaintiff and her brother Boston Stalnaker; that said two thousand three hundred and eighty-seven acres was very valuable on account of the timber; that a large part of it was underlaid with one or more very valuable veins of coal and the timber upon and the coal under said lands constituted almost its entire value; that the Mill Creek Coal and Lumber Company had sold the timber on its undivided eleven-thirteenths to the defendant, Tygart's River Lumber Company at the price of $30.00 per acre for the timber alone; that the Tygart's River Lumber Company and W. S. Tolbard, acting under the rights acquired from the Mill Creek Coal and Lumber Company, had entered upon the said two thousand three hundred and eighty-seven acres of land, and had built a railroad thereon which had greatly damaged the premises, and established a large lumber camp, which they were occupying with a large force of employes and laborers, etc., and had made log roads, built log ways thereon and had removed and cut thousands of feet of very valuable timber, and were still continuing to cut and remove timber, without the permission or consent of the plaintiff or Boston Stalnaker; that in the case of the said Yocum against Stalnaker and others for partition, the commissioners appointed had acted, laying off and assigning to the Mill Creek Coal and Lumber Company for its eleven-thirteenths therein, one thousand six hundred and eighty-seven acres, but that an exception to said report by the Mill Creek Coal and Lumber Company was sustained by the court, and commissioners were again directed to go upon the land and partition the same; that partition on

the last order had not yet been made; that plaintiffs were not familiar with the boundaries of the said two thousand three hundred and eighty-seven acres of land, neither were they informed as to what part was underlaid with coal, nor how many merchantable veins of coal there were on said land, and that all of said facts should be definitely ascertained before a partition of said land should be made; and prayed that the defendant, Tygart's River Lumber Company and W. S. Tolbard be enjoined from cutting any timber on said two thousand three hundred and eighty-seven acres until such time as the rights of the parties should be ascertained and fixed, and their interests assigned to them, and that they be restrained and enjoined from operating any part of said railroad which was upon the lands assigned to plaintiff and defendant Stalnaker; that an accounting be had of timber cut upon the said two thousand three hundred and eighty-seven acres of land be ascertained and the value fixed, and a decree in favor of plaintiff, Harriet S. Wamsley, against said Tygart's River Lumber Company be rendered for the full, fair one-thirteenth part of the value of the timber so cut, and the damage to the said tract of land by reason of building of said railroad thereon and the erection of said lumber camp, be ascertained and a decree rendered for her one-thirteenth part of such damages; that the true boundaries of the said two thousand three hundred and eighty-seven acres of land underlaid with coal and the character, amount, and quality of the said coal be ascertained, and the land partitioned with reference thereto; and praying that the cause of Yocum against Stalnaker and others, together with all the papers and proceedings thereon be taken and read as part of her bill and for general relief. The Mill Creek Coal and Lumber Company filed its answer to said bill, admitting that it had sold the timber on its eleven-thirteenths of the said tract of land to the Tygart's River Lumber Company as well as the timber on over six thousand acres adjoining said tract, and that in its contract of sale of timber to said Tygart's River Lumber Company, it undertook to authorize the said Company to put down on said tract a tram or other railroad over which to haul the timber which it should cut upon said tract, as well as the timber it should cut upon the other lands adjoining the same as the respondent claimed it had a right to do; that respondent was not

advised specifically as to what timber the said Tygart's River Lumber Company had cut upon the said two thousand three hundred and eighty-seven acres, but was informed that it had cut but a very small quantity of said timber, and that what cutting it had done upon said land had in no way interfered with the partition thereof by the owners according to their respective rights; that under the decree in the circuit court entered at its May term, 1903, commissioners were then proceeding to partition said land among said owners, which partition respondent had no doubt would be reported in a very few days; that whatever timber had been cut upon said land by the Tygart's River Lumber Company had been cut upon that portion which would according to the rules governing courts of equity, be assigned or allotted to respondent as it adjoins other large boundaries of land belonging to respondent; respondent denied that the logging railroad would be of any damage to said property, and claimed that if plaintiff had any right to or against the Tygart's River Lumber Company for damages or for relief of any kind, it was not by the extraordinary remedy of injunction; that any damage that could possibly result therefrom to the plaintiffs was susceptible of compensation in damages; and prayed for the dissolution of the injunction, or in any event the dissolution of that part of it which restrained the use of the logging road by the defendant, the Tygart's River Lumber Company, or defendant, Tolbard.

The defendants, the Tygart's River Lumber Company and W. S. Tolbard, filed their separate answers respectively, and admitted building the logging railroad upon a part of said two thousand three hundred and eighty-seven acres of land, and the cutting of timber on two hundred or three hundred acres of said land, but denied that it would in any way interefer with a fair partition of the land; that the cutting upon said land was upon that part assigned by the commissioners to the Mill Creek Coal and Lumber Company, and which respondents supposed would be confirmed by the court, and denied all the material allegations of the bill not admitted to be true, and asked that the injunction be dissolved, especially so far as to permit the use of the logging railroad. On the 11th of July, 1903, the injunction was so modified as to permit the defendants to operate the railroad constructed over said two thousand three hundred and eighty-seven acres of land. On the 8th day of August, the

commissioners filed their report of partition, allotting and as-signing to Harriet S. Wamsley two hundred and fifty acres, and to Boston Stalnaker two hundred and fifty acres, and to the Mill Creek Coal and Lumber Company two lots numbered three and four containing respectively five hundred and seventy-three and one-half acres and. one thousand three hundred and thirteen and one-half acres, making together one thousand eight hundred and eighty-seven acres, describing said several lots or par-cels so assigned to each of the several parties by metes and bounds. Harriet S. Wamsley and Boston Stalnaker filed their four exceptions to said report of partition: 1st, "because they had no notice of the time of executing the said order of parti-tion"; 2nd, "because said commissioners do not show the acreage of coal on the said lots of land so assigned to the different par-cels"; 3rd, "because said commissioners report nothing as to the value of the timber on the different lots of land so assigned by them"; 4th, "because said commissioners do not report the value of any of the parcels of land." On the 19th of October, 1903, the cause was heard upon the papers and proceedings and upon said report and upon said exceptions. The court over-ruled the exceptions and confirmed the report and the said par-tition, from which decree overruling the exceptions and confirm-ing the report and partition, the said Harriet S. Wamsley, C. S. Wamsley and Boston Stalnaker appealed.

The important question to be decided in this case, and which seems never to have been passed upon in this State, is raised by the first exception to the report of the commissioners that no no-tice was given to Wamsley and Stalnaker of the time of execut-ing the order of partition. Section 1, chapter 79, Code, gives jurisdiction to the circuit courts in cases of partition and pro-vides that "In the exercise of such jurisdiction, may take cog-nizance of all questions of law affecting the legal title that may arise in any proceedings." The usual mode of exercising such jurisdiction is by suit in equity. All tenants in common, joint-tenants and co-parceners interested in the real estate to be par-titioned, are necessary parties to such suit or proceeding, and must be summoned, or brought into court by order of publica-tion, if non-residents or unknown, as in any other case. The statute does not prescribe the mode of procedure and makes no provision for notice to be given to parties interested, of the time

of executing the decree or order of partition by the commissioners. In 15 Ency. Pl. and Pr. 827, it is said: "Such commissioners are usually required by statute to give notice of the time of their meeting to make partition." It seems a little singular that this question of notice to the parties of the time of executing the decree directing the partition by the commissioners has never been brought to the appellate court of this State; it is however probably accounted for in the fact that it is the general practice in most of the circuit courts, at least in the State, for the commissioners appointed to partition, either under the direction of the court, or from an innate sense of justice as well as adhering to the immemorial custom to give notice either to the parties in person or to their attorneys; this notice is usually informal, either by letter or word of mouth, informing the parties that on a day mentioned the commissioners will proceed to execute the decree of the court, and usually the parties are present either in person or by agent or attorney to look after their respective interests in the matter. The common law proceeding in partition required notice. "The former Statutes of Virginia contemplated the writ of partition (*de partitione facienda*) as the proper and regular proceeding to coerce partition between joint-tenants and tenants in common; being founded in that particular, as in most others, on the Statutes of 31 Hen. VIII. c. 1. and 32 Hen. VIII. c. 32, which again had derived the writ in question from the common law in respect to co-parceners," 2 Minor 482. And Freeman on Cot. and Par., sec. 520, speaking of partition by proceedings at law, says: "In proceedings at law, after the entry of the first judgment in partition, the writ *de partitione facienda* was issued to the sheriff. By this writ he was commanded, with twelve good and lawful men of the neighborhood, to go to the manors and tenements, and there in the presence of the parties (who are to be forewarned) if they be willing to be present, by the oath of said twelve men, respect being had to the true value of the property, to cause the same to be divided;" and in sec. 522: "The statutes usually require the commissioners to be sworn before entering upon the discharge of their duties, and also to give notice to the parties interested, of the time and place when and where they will make the partition", and in 17 A. & E. E. L. 769 (1st Ed.) : "Notice of the time and place of their

meetings should be given to the interested parties, and usually they are all required to be present and deliberate together", and authorities there cited. Statutes in some of the states specifically require that such notice shall be given, while many of them make no such provision. The authorities differ somewhat in regard to the necessity of requiring notice of the time when the commissioners will meet to execute the decree of partition in the absence of a statute to that effect. Some of the best authorities holding that when the statute is silent as to such notice, the requirement in such notice is always implied. In *Doubleday* v. *Newton,* 9 How. Pr. R. 71, it is held: "Although the statute does not, in terms, require notice of the proceedings to be given to the parties in partition, (4 How. Pr. R. 133,) yet the necessity of such notice must be implied. For it is one of those adjudications of a judicial nature affecting the rights and interests of the parties, in which they have a right to substantial and beneficial notice, and without it the report of the commissioners will be set aside", and in *Simpson* v. *Simpson,* 59 Mich. 71, the case was taken up among other things on the exceptions to the report of the commissioners, because the exceptants were not notified of the meeting or meetings, and neither of them attended said meeting or meetings of the commissioners, nor any one in their behalf. It was there held that notice "To the defendants, of the meetings of the commissioners is essential to the validity of their action. The requirement of such notice is always implied when not expressed in the statute." In *Row* v. *Row,* 4 How. Pr. R. 133, it is held: "Notice of commissioners' proceedings in partition is not required by statute to be given to the parties. It would be proper, however, that the parties should have an opportunity to be heard before the commissioners, before making partition." Our statute has not repealed the common law in the matter of notice, it simply confers jurisdiction upon the circuit court, but does not give any directions as to the mode of procedure, and being silent on the question of notice, the requirement of giving notice must be implied, the propriety of such notice is well expressed in the case of *Doubleday* v. *Newton, supra.* "It is one of those adjudications of a judicial nature, affecting the rights and interests of the parties in which they have a right to substantial and beneficial notice." Upon the question of notice by the commission-

ers of partition, to the parties of the time of executing the decree of partition, appellees rely strongly upon the case of *McClanahan* v. *Hockman,* 31 S. E. 516, where it is held that such notice is not required. The only reason for the opinion of the court on this point seems to be the fact that the statute does not, in terms, require that notice should be given; it simply says: "It is not necessary, under our statute of partition, that the commissioners should give notice, though it is frequently done. The parties interested have their day in court when the report of the commissioners is made and it comes before the court for approval or rejection." Only this and nothing more, and this is carried into the syllabus. It is true as a rule, a party once summoned in a cause is in court for all purposes, but in a cause for partition as in a cause referred to a commissioner for account and report, many things are to be done in the case which are not done in open court, and in which the parties interested should have notice that they may protect their interests in such proceedings. Parties in interest might be able to call to the attention of partition commissioners such facts and conditions as add materially to the value of particular portions of the real estate to be divided, or detract from such value as the case may be, such facts and conditions as might not be discovered or noticed by the commissioners, who are entitled to have all the light possible in relation to the property to be partitioned, in order to enable them to make a fair and equitable partition. If parties interested have no notice of the action of commissioners until the same is brought into court, they are placed at a great disadvantage when they have nothing to guide them except the map and report. in making exceptions thereto in case exceptions should be necessary; while if on the ground with the commissioners, they could view the premises and not only see just wherein the commissioners were at fault, but aid them in arriving at just conclusions. It is claimed that the report of the commissioners on its face shows the injustice to the parties, and especially on the face of the map in the shape of the parcels set apart to Wamsley and Stalnaker. The portions allotted to the appellants do not seem to be laid off with a view especially to symmetry of proportions, being nearly three miles long and only 37 rods wide; but no exception was taken to the report on this ground. However as the cause will have to be

again recommitted to the same or other commissioners, this defect in the report as well as others complained of, if they exist, can be then corrected. The remaining exceptions after that of want of notice, are the failure of the commissioners to show the acreage of coal on the several lots of land assigned to the different parties, and the value of the timber on the several lots, and that they do not report the value of any of the parcels of land. We hardly see the object of reporting the value of the parcels or any of them, nor of the acreage of coal and timber. The commissioners go upon the land and view the same, taking into consideration everything whatever that may be known, that gives value to each and every part of it, whether of coal, minerals, timber, or the surface for agricultural purposes, and these various elements of value are taken into consideration by the commissioners in arriving at their conclusions, and they equalize the value of the shares of the various parties entitled thereto, by increasing the acreage of those shares which contain less of the elements of value, or decreasing the quantity as the case may be. It is very evident from the report of the commissioners that they observed, or at least tried to observe, these principles in allotting to the appellants their shares as they increased their acreage from one hundred and eighty-five and six thirteenth acres to two hundred and fifty acres each, making an excess of sixty-four and one-half acres of the quantity they would be respectively entitled to, if each and every acre of the premises was of the same value. In *McClanahan* v. *Hockman, supra,* (Syl. pt. 4), it is held: "A report of commissioners in partition is not defective for failure to place a money valuation on all or a portion of the lands." In *Ranson* v. *High,* 37 W. Va. 838, 38 Am. St. 67, (Syl. pt. 2), it is held: "When the action and report of the commissioners is excepted to on the ground that they have not set apart and assigned to any one his just and full share, unless it appear that the commissioners misunderstood or failed to perform some duty or acted on a wrong principle, the court will not sustain such exception, unless it be shown by a clear and decided preponderance of evidence that the commissioners have made an unequal and unfair partition." See also *Gillespie* v. *Bailey,* 12 W. Va. 70. And in *Supervisors* v. *Stout,* 9 W. Va. 703, (Syl. pt. 4), it is held: "In the absence of evidence clearly showing that the damages are insufficient, the inquest taken on the ground is conclusive." The evidence taken in case at bar

is by no means sufficient to warrant the court in disturbing the
report of the commissioners, on the grounds constituting the
last named exceptions.   For the reasons herein stated the de-
crees complained of are reversed, the report of partition set
aside, and the causes remanded for further proceedings to be
had therein as indicated in this opinion, and according to the
rules governing courts of equity.

*Reversed.*

MILLER AND BRANNON, JUDGES, (*dissenting*) :

We dissent from the decree of reversal in this case which is
based on want of notice by the commissioners of partition of the
time fixed for making the partition.   We do not think that no-
tice is essential.   The statute of partition makes no mention of
such notice.   It is not required by that statute in any of its
provisions.   The notice which the decision in this case requires
will be regarded as formal legal notice, and carried out to its
logical conclusion would require publication of such notice as
to a non-resident owner or party in interest; for it is a legal
notice, one required by law under the holding of this Court, and
how such publication can be dispensed with we do not see.   The
non-resident is just as much entitled to notice as the resident
owner or party in interest, and the Code, chapter 121, section 2,
provides that a legal notice to a non-resident may be published
in a newspaper, and no other mode of notice to him is provided
by law, except by service outside the State.   This will be ex-
ceedingly inconvenient and costly, and we do not see any law
requiring such notice.   The parties have been brought before
the court, and they must watch the proceedings therein, includ-
ing the proceedings of the commissioners.   Besides, they have
their day in court upon the coming in of the report.   They must
be present when it comes in and do what is necessary to protect
their interests by exception or otherwise.   If they desire to be
present on the ground, they can ascertain from the commission-
ers the time when they will go upon the land to view it in order
to make the partition.   They must know that a decree for peti-
tion has been made, and they must exercise some diligence to
be present when it is to be executed.   The court simply employs
the commissioners to view the land instead of doing so itself,
and they must attend, if they desire.   Such a notice is neither

original nor *mesne* process; it is simply a step of the court in the proceedings in the case preparatory to a final decree. In this view we are supported by the supreme court of Virginia in *McClanahan* v. *Hockman,* 31 S. E. 516, holding that "commissioner in partition need not give notice. The parties have· their day in court when the report comes before it for approval or rejection."

We cannot see any office to be performed by notice. True, the parties might be present before the commissioners to make· their claim; but we can see no other office that the notice could perform and we do not see that it is a right given by law to· make any argument before the commissioners, we say right. The commissioners go upon the premises, view them, and form their own estimate of the value of the whole tract and the relative value of the parcels set apart to the different heirs. We do not suppose that the parties have right to summon witnesses and have their evidence heard by the commissioners. Under our practice that is never· done. Such evidence is to be heard in court when the report shall come ·in. No facilities under our practice enable evidence to be taken in the field. Who reduces· it to writing? If not reduced to writing, how can incompetent evidence be eliminated? How can exception be taken and noted against the incompetent evidence? We do not suppose, in short,. that there can be any trial before the commissioners in the· country. Then, what function does the notice perform?