# CHARLESTON.

GEORGE P. ALDERSON v. HORSE CREEK COAL LAND COMPANY *et als.*

Submitted March 21, 1922.   Decided March 28, 1922.

1. PARTITION—*Affidavits Are Admissible in Support of Objection to Confirmation of Report in Partition.*

Affidavits are admissible in support of an objection to confirmation of a report of a partition of real estate, in kind, based upon exceptions to the report, since the partition, making up and filing of the report and confirmation are proceedings by way of execution of the decree adjudicating the merits of the cause; and the evidence relied upon to sustain the objection need not be in the form of depositions. (p. 640).

2. SAME—*An Interlock Between a Tract in Suit Held by Tenancy in Common and Another Tract Purchased by One of the Tenants May Be Included in the Partition Suit.*

An interlock between a tract of land constituting the subject matter of a suit for partition, as to which tenancy in common between the parties thereto is admitted and asserted, and another tract purchased by one of them, while such relation subsisted, may properly be included in the partition, with the consent of the other party, express or implied, coupled with willingness on his part, to pay his pro-

90 W. Va.

portionate share of the purchase money of the land included in the interlock, as indicated by his conduct in the suit. (p. 641).

3. SAME—*Commissioners Are not Bound to Report the Facts Showing the Equity and Fairness of the Partition, Which Matter is Presumed in the Absence of Contrary Showing.*

A partition of land shown by a report made by commissioners appointed for the purpose is presumed, in the absence of anything in the record or on the face of the report disclosing the contrary, to be equitable, just and fair in all respects, and the burden rests upon a party thereto objecting to confirmation of the report, to establish the contrary by a clear and decided preponderance of evidence in the form of affidavits, oral evidence taken at the bar of the court and reduced to writing, or in such other form as the court may direct. The commissioners are not bound to report the facts showing the fairness and equity of the partition. (p. 641).

4. SAME—*Affidavits Held Insufficient to Sustain Objection to Report of Partition on the Ground of Unfairness of Division of Coal Lands.*

Affidavits filed in support of an objection to the confirmation of a report of partition of lands containing coal, on the ground of relative inequality of value and division of the coal in the land of the excepter by a ravine or small stream, so as to render the mining thereof less convenient than it otherwise would be, showing nothing more than an allotment to the exceptor of a relatively large portion of the front land somewhat cut up by ravines, and in which the coal crops out, and a small branch running through it, are insufficient to overcome the presumption of fairness in the partition. (p. 642).

5. SAME—*The Court Will Sustain, in its Decree of Partition, Rights of Way for Mining and Timbering Over Lots as a Necessity in the Absence of Contrary Proof.*

In a partition in which rights of way for mining and timbering over the lots assigned and alloted are created in favor of both parties to the division, there is a presumption of necessity therefor, which the court will sustain in its decree, in the absence of proof of the contrary. (p. 643).

6. TENANCY IN COMMON—*In an Accounting on Partition it is Proper to Exclude a Claim for Purchase Money for Tax Title in Excess of Amount Purchaser Paid at the Tax Sale and Statutory Allowances.*

In an accounting between tenants in common, on partition of the land, for taxes and the costs of redemption of the land

of one of them from an invalid tax sale, directly and indirectly paid by the other, it is proper to exclude a claim for purchase money of the tax title from a third party, in excess of the amount paid by the purchaser at the tax sale and such additional sums as the statute .secures to such purchaser, with interest thereon. (p, 643).

7.  SAME—*Where Tenant in Common Refused to Disclose Amount Paid for Hostile Title He May Not Complain of Amount Allowed.*

A tenant in common entitled to reimbursement as to a portion of the purchase money paid by him for a hostile title covering the common property, or a part thereof, and unavailingly called upon, in an accounting, to disclose the amount so paid, cannot complain of an allowance made to him by a commissioner in chancery, on account thereof, based upon the purchase price recited in the deed for the land so purchased. (p. 644).

8.  SAME—*Allowance of Compensation for Timber Taken From Land, Upon the Assumption That All the Land Bore Timber, Held Erroneous.*

An allowance in a settlement between tenants in common, by way of compensation to one of them for timber taken from the land by the other, upon the assumption that all of the land bore timber, notwithstanding strong probability of lack of timber on some of it, disclosed by the evidence, is erroneous. (p. 644).

9.  EVIDENCE—*The Actual Amount of Money for Which Timber Was Sold is Better Evidence of its per Acre Value Than a Calculation Based Upon Estimates and Quantities.*

The actual amount of money for which the timber on a tract of land was sold by the thousand feet is better evidence of its value per acre than a calculation at proved prices per thousand feet, based upon a mere estimate of the quantities of the several kinds of timber. (644).

Appeal from Circuit Court, Boone County.

Suit by George P. Alderson against the Horse Creek Coal Land Company and others. Decree for plaintiff and the Coal Land Company appeals.

*Modified and affirmed.*

*J. Blackburn Watts* and *J. W. Kennedy,* for appellant.
*Murphy & Wade* and *W. E. R. Byrne,* for appellee.

90 W. Va.

POFFENBARGER, PRESIDENT:

The assignments of error on this appeal are predicated upon exceptions to two reports filed in the cause, one of which conditionally allots in partition, two-thirds of each of two tracts of land to the appellee and one-third to the appellant, and the other settles certain accounts between them. The governing principles are stated in *Alderson* v. *Horse Creek Coal Land Company,* 81 W. Va. 411. The decree complained of now purports to apply them and accord the parties their respective rights, in conformity therewith.

To the report of the partition made by the five commissioners appointed for the purpose, three very general exceptions were filed by the appellant, owner of one-third of each of the two tracts of land, one containing 650.43 acres and the other 616.23. They charge assignment of more than two-thirds in value to the appellee and less than one-third to the appellant and wrongful allowance of rights of way over the parts assigned to the latter. Two affidavits were filed in support of the first two of the exceptions. The facts stated in them seem to relate for the most part to the partition of the 650.43 acre tract. One is that the allotment to the appellant includes part of an alleged interlock between the deed under which Alderson and McClaugherty held and a tract of land known as the Hill land, acquired by the appellant, June 1, 1901, under a different title. Under the impression that the division line between the two tracts, known as the "James Line," was straight, contrary to the fact, William Thompson, Commissioner of School Lands, conveyed to Alderson and McClaugherty, by a straight line from one point to another, and thus included about 42 acres of the Hill tract. The commissioners in this cause, in making the partition, included this strip, awarding approximately one-half of it to each of the parties, as constituting a part of the 650.43 acre tract. This is disclosed by the report as well as by an affidavit. Another interlock of 5 acres, included in the 616.23 acre tract and assigned to Alderson, occupies a like status. It is included in the Thompson deed. The affidavits filed in support of the exceptions charge that the coal in the land allotted to the

appellant is relatively less in quantity than that in the land allotted to the appellee, because the former gets the coal outcrop and land fronting on streams and cut up by ravines, while the latter gets land in which the coal is comparatively free from loss by such means. Another fact relied upon is the division of the coal in the land assigned to the appellant out of the 650.43 acre tract, by Sugar Camp Branch, constituting an obstacle to convenient mining of the tract.

Alleged inadmissibility of the affidavits is relied upon by the appellee. The exceptions to the report form the basis of a mere motion for an interlocutory order, similar to a motion for a continuance, an order of sale in an attachment proceeding, a temporary injunction, the appointment of a re-receiver and a new trial. It affects the merits of the cause, only incidentally. Directly it pertains to mere execution of a decree by which every legally important issue in the cause has been determined. Upon this conception of the proceeding, our knowledge of uniform practice and the text in 30 Cyc. 264, we are clearly of the opinion that the affidavits are admissible.

As to the interlocks, the commissioners and the court below held that the appellant is precluded from exclusive right to them, under conveyances conflicting with the Thompson deed, by former adjudication on the original bill, as was held in respect of its claim under the Levassor title, on the appeal disposed of in 81 W. Va. 411. These interlocks are both included in purchases made by Wingfield, Trustee, while he was a cotenant with Alderson in the lands conveyed by the Thompson deed, wherefore they inured to the benefit of both parties. The appellant cannot hold them exclusively against its cotenant, in the absence of unwillingness on the part of the latter, to reimburse the former, as to his proportionate part of the purchase money. The status of these two interlocks is the same as that created by the Levassor title. No effort has been made to differentiate them. We deem it unnecessary to say whether the appellant is precluded as to them by a former adjudication.

In connection with the affidavits setting up the matters

relied upon as ground of impeachment, failure of the report to show, by a recital of facts, the equity and fairness of the division, is invoked. Lack of disclosure of such facts on the face of the report, or otherwise, constitutes no ground of impeachment. The commissioners were under no duty to report them. *Wamsley* v. *Mill Creek Coal Co.,* 56 W. Va. 296, 306; *Ransom* v. *High,* 37 W. Va. 838; *McClanahan* v. *Hockman,* 96 Va. 392. In the absence of evidence to the contrary, there is a presumption of the correctness of the report. It is the right of the parties to attend the commissioners, in their work, and have their suggestions and claims considered and passed upon; and, if unsuccessful in their efforts to obtain a fair division, to produce evidence to the court, showing how, if at all, they have been wronged. A party who has allowed a division to be made and reported, without any effort on his part to have it correctly made, and to show in what respect it is incorrect, is in no situation to complain, and he is not permitted to do so, unless the wrong done him appears on the face of the report or is dis-closed in some way by the record of the cause.

Insufficiency of the affidavits to overthrow the report on the ground of inequality of value, all pertinent elements and matters being considered, is obvious. They contain no data of any kind from which such inequality can be inferred. The relative quantities of coal are not given and the advantages of location are not set forth. Full compensation for loss of coal cut out by the creek and ravines may be afforded in the values of the creek bottom lands, giving space for dwellings, stores, shops and other structures and enterprises, and the greater accessibility of the coal, reducing the expense of operation and facilitating production. Neither the exceptions nor the evidence adduced in support of them can be said to do more, on the ground of inequality, than to charge it in very general and indefinite terms. A report of partition cannot be impeached in that way. The presumption in favor of its correctness is so strong that it must be permitted to stand, in the absence of clear proof of substantial infirmity in it. *Carper* v. *Chenoweth,* 69 W. Va. 729; *Ransom* v. *High,* 37 W. Va. 838; *Henrie*

v. *Johnson,* 28 W. Va. 190, *Cross* v. *Cross,* 56. W. Va. 185; *Smith* v. *Smith,* 77 W. Va. 260; *Solesberry* v. *Virginian Ry. Co.,* 73 W. Va. 642. Nor is any data given as to inconvenience of mining.

The presumption of correctness, in favor of the report, prevails over the third exception taken on the ground of allowance of easements over the lands allotted to the appellant, in the form of rights of way for getting out the timber, coal and other minerals from the parts assigned to the appellee. Like easements were imposed upon the lands of the appellee in favor of the appellant. Such easements can be imposed only upon considerations of reasonable necessity. *Sharp* v. *Kline,* 82 W. Va. 13; *Gwinn* v. *Gwinn,* 77 W. Va. 281. But, in case of such necessity, a court of .equity, in awarding partition, may provide for or create the easements. They are as clearly subject matter of the work of the commissioners as the land, buildings and other elements of value. Hence, when they are provided for in the report, that instrument is evidence of necessity therefor. It is not incumbent upon the commissioners to state the facts calling for such provision. To repel the presumption of necessity, the excepter must prove lack thereof, as in the case of impeachment of the report upon any other ground.

One item of the account stated by Commissioner Fulton to whom the cause was referred for ascertainment of facts essential to a settlement, is made up of the amount necessary to redeem the Alderson interest from Leftwich and Bradley, deemed to have been paid them by the appellant in its alleged purchase of that interest and the taxes paid on it, from the date of redemption to December 1920, by the appellant, aggregating $4,112.09, as ascertained by the commissioner. No error is perceived in the calculation thereof. It seems to have been carefully and intelligently made and is founded upon the most reliable evidence found in the record. Neither the exception nor the briefs filed for the appellant point out any error in it. It is claimed that the full amount paid by the appellant to Leftwich and Bradley, as for purchase of he land from them, $2,535.88 should be allowed as cost of redemption. It is scarcely necessary to

say nothing can be allowed for the purchase of a void tax title. By its purchase, the appellant placed itself in the shoes of its vendors and can claim no more than they had right to under the statute, as purchasers at a tax sale.

Nor is there any error in the allowance of $131.87, made to the appellant on account of purchase money of the Levassor title procured by J. R. Wingfield, Trustee, and conveyed to the appellant, they being in law successive cotenants of the appellee, wherefore the purchase inured to the benefit of the appellee, subject to his payment of his *pro rata* share of the purchase money by way of reimbursement. The Levassor purchase, consisting of eight tracts ranging in quantity from 25 acres to 1,606 acres, contained in the aggregate 4,121.50 acres, treated by the commissioner as fully covering the two tracts here involved. The purchase money, as recited in the deed to Wingfield, Trustee, was $300.00, but an affidavit of Wingfield, admitted in evidence by agreement, is relied upon as showing falseness of the recital and payment of a much larger amount. It says 404 acres of the land cost $5.00 per acre and 147 acres $2.00 per acre, aggregating $2,314.00. This affidavit is altogether uncertain as to whether these two tracts are parts of the 4,121.50 acres conveyed to Wingfield by the deed of November 1901. It says the lands to which it refers consisted of 551 acres. There may have been two purchasers and the recital of the deed may be correct. If it is, no fault is found with the apportionment and no error is perceived in it. The appellant no doubt knows whether the 4,121.50 acres cost more than the recited $300.00 and the burden was upon it to prove the real consideration, if it was different from that recited in the deed. It has not done so in any definite or certain way. Nor has it asserted any claim of compensation in respect of the other two interlocks, although repeatedly called upon to appear before the commissioner and assert its rights and produce evidence in support of its claims.

Although the appellant has not successfully assailed any of the findings in its favor, on the ground of inadequacy, we are of the opinion that too much was found against it, on

account of the timber sold, cut and removed from the common land. This timber was sold as part of a large area of about 8,000 acres all of which was claimed by the appellant. The award was made on the basis of $20.00 per acre on all of the land allotted to the appellee, 844 2-3 acres, and amounts to $16,888.80, on which interest was allowed from January 1, 1914, making a total of $23,897.65. In the entire area from which the timber was sold, there was at least 200 acres of cleared land. Whether any of such land was within the two tracts here involved does not clearly appear. It is not located otherwise than by the statement that it was composed of the creek bottoms. As the two tracts of land border to some extent on streams, it is highly probable that some of the cleared land was on them. At any rate, the appellee can recover only such damages as he has proved and he has not proved that all of the land in which he was interested was uncleared. In this state of the evidence, equity and fairness require an apportionment of the value of the timber, on the basis of a charge of the 200 acres of cleared land against the entire timber area, which will make the appellee bear his porportion of it. Then, again, the evidence of the value of $20.00 per acre is uncertain and inconclusive. The timber was sold at certain prices per thousand feet board measure and not by the acre, and a witness claims it was estimated by the purchasers, that the prices stipulated would produce about $20.00 per acre. But he furnishes no data for this estimate. The prices were $6.00 for the hard woods and $2.50 for the soft woods, and the relative quantities are not stated. An affidavit of Wingfield who collected and accounted for all of the purchase money, as trustee of the appellant, admitted under an agreement, shows it all amounted to $131,151.08, which would make the rate per acre considerably less than $20.00. The affidavit was admitted subject to objections for irrelevancy and immateriality. In so far as it relates to the value of the timber, it is both relevant and material. What the timber actually sold for is better evidence of its value than a calculation based upon a mere estimate of quantities. The entire area as indicated by the tax assessments, at the dates of the sales, was about 7,940

acres, from which 200 acres is to be deducted for cleared land, leaving 7,740 acres of timber. On this basis, the value of the timber was slightly less than $17.00 per acre, and the appellee is entitled to $14,465.12, and the interest thereon from Jany. 1, 1914, to Dec. 1, 1920 $6,003.03, making the total $20,468.15. No error is perceived in the basis on which the interest was calculated, except as to the amount of the principal sum. The commissioner adopted a date which allows interest for the average time as nearly as it can be ascertained from the evidence.

The decree will be corrected in respect of the amount due the appellee for timber taken from the land and the interest thereon, as above indicated, and so as to make the balance adjudged in his favor and required to be paid to him $16,-225.19 instead of $19,653.69, and, as so modified and corrected, it will be affirmed.

*Modified and affirmed.*