# CHARLESTON.

## RHODA BRADLEY v. KENOVA TRADING COMPANY.

### Submitted January 30, 1923.   Decided February 6, 1923.

1. EVIDENCE—FRAUDULENT CONVEYANCES—*Wife Has Burden . of Proving Property Formerly Belonging to Husband Purchased by Her With Separate Estate; When Proof as to ·Facts of Purchase of Husband's Property With Wife's Separate Estate Within Her Power, Her Failure to· Adduce Proof Held Badge of Fraud.*

   When a wife claims to have acquired indirectly the business and property formerly belonging to her husband, the burden of showing the bona fides of the transaction and that the same was purchased by her with her own money or separate estate is upon her, and being possessed of the evidence or having it within her power to prove the facts clearly and fully, her failure to do so constitutes a badge of fraud. (p. 107).

2. FRAUDULENT CONVEYANCES—*Failure to Submit Question of Bona Fides of Acquisition of Husband's Property by Wife Error.*

   When in such a case the facts which would show the bona fides of the transaction have not been clearly and fully developed by the beneficiary, the court should not by instructions take the case from the jury but should submit the issues to them on the evidence adduced, and not to do so is error. (p. 107).

3. TRIAL—*Court Should Not Direct Verdict, Unless Justified in Setting Aside Verdict Unless Contrary to Direction.*

   In such cases the court is never justified in directing a verdict, if on submission of the evidence to the jury the court would not be justified in setting aside their verdict if it should be contrary to the verdict directed. (p. 107).

   (McGINNIS, JUDGE, absent).

Error to Circuit Court, Wayne County.

Action by Rhoda Bradley against the Kenova Trading Company. Judgment in the circuit court for plaintiff on appeal from a court of the justice of the peace, and defendant brings error.

*Reversed and remanded.*

W. T. *Lovins* and *Philip P. Gibson*, for plaintiff in error.
M. S. *Biddle*, for defendant in error.

Miller, President:

In an action begun before a justice and tried on appeal the plaintiff recovered a verdict by peremptory instruction of the court, and the judgment thereon to which the present writ is directed was that she recover of defendant the sum of $231.13, the principal and interest sued for, and costs.

After the appeal was taken to the circuit court, the papers from the justice's court filed there appear to have been destroyed by fire by the burning of the court house. There was an effort made to supply these papers, but they are not complete, The copy of the justice's docket supplied shows the style of the case and that summons issued, but contains no record of or reference to the plaintiff's claim, nor to any pleading in the case. There was a motion in the circuit court to dismiss the action, on the ground that the transcript before the justice was not sufficient for the maintenance of the action; the defendant also moved the court to quash the summons and the return thereon. This action was not taken, however, until after defendant had at a former term appeared and filed his plea in writing. The summons, if ever supplied, is not in the record. Whether it was sufficient as a pleading or statement of plaintiff's claim does not appear. The court, however, overruled the motions to dismiss and quash, and refused at the same time to strike out defendant's plea in writing, and the parties went to trial on the case thus presented.

From the defendant's special plea and the evidence adduced on the trial, we learn that the plaintiff sued defendant for the sum of $215.00, the amount of her check, with interest, which she drew in favor of the defendant company as follows: "Prestonburg, Ky., Feb. 15, 1921.     The Bank of Josephine.   Pay to the order of Kenova Trading Company Two Hundred and Fifteen Dollars. For flour, lard and meat." Signed: "Rhoda Bradley." It is endorsed: "Pay to ourselves. Kenova Trading Co. F. R. Peck, President."

The defense sought to be interposed by the special plea, a very informal and uncertain pleading, in substance is that plaintiff's claim is fraudulent, because during the months of August and September, 1920, defendant received certain orders for goods from Adam Bradley Grocery Company, of Alphoretta, Ky., amounting to $220; which had not been paid for, and was still due and unpaid; that Harris Bradley was the husband of plaintiff, and had operated a grocery store at Alphoretta in the name of his infant son, a child of only seven years, as Adam Bradley Grocery Company, in which the said Rhoda Bradley clerked; that in the operation of said store Harris Bradley and Rhoda Bradley colluded together to defraud the creditors of said store, and that under certain executions held by the sheriff of Floyd County, Kentucky, the said Rhoda Bradley with funds not her sole and separate estate purchase said store in fraud of defendant; and that defendant would not have sold said goods to the Adam Bradley Grocery Company if it had known the true facts and circumstances, which were fraudulently represented by plaintiff.

The evidence shows that Mrs. Bradley, after purchasing the stock of goods for $200.00, appraised at $350.00, on January 18, 1921, which was paid in cash, took charge thereof, then located in a store building owned by her husband, and operated the business in about the same way it had been operated previously; and that on February 15th following, a little less than a month from the time she purchased the stock of goods, she drew the check in question and enclosed it in a letter written on the letter head formerly used by the Adam Bradley Grocery Company, but with the heading cut off, but unsigned by her, saying in substance, I am enclosing my check for $215.00, and requested defendant to ship her certain quantities of flour, lard and meat therein described. On receipt of this letter with the enclosure, defendant sent the check by a special messenger to the bank on which it was drawn, collected the money, and in place of sending plaintiff the goods ordered, credited the money on the account of Adam Bradley Grocery Company. The plain-

tiff being so notified, made several demands for the goods or the return of the money, which was refused; and this suit followed with the result already indicated.

The theory of the defense as indicated by the plea filed and by the character of the evidence offered, seems to have been: First, that Mrs. Bradley was interested in the store conducted in the name of Adam Bradley Grocery Company, and that she and her husband conspired and colluded together in the operation thereof in that name to defraud defendant and other creditors, justifying its appropriation of the proceeds of the checks sued on to the old account unpaid; Second, that the money with which plaintiff claimed to have purchased said stock of goods was not her sole and separate estate but that of her husband or of the business in which defendant had entrusted its goods; Third, that the money deposited in bank and on which said check was drawn was in fact not the money of plaintiff but that of the business or copartnership to which defendant had given credit.

Manifestly the trial court was of opinion that these defenses if good had not been sustained by the evidence, wherefore its direction to the jury to find for the plaintiff the amount sued for.

The action of the court below in directing a verdict and its refusal to set aside the same and award defendant a new trial, are the only substantial grounds of error relied on for reversal of the judgment.

The evidence shows that in one of the suits in Kentucky Mrs. Bradley was sued along with her husband Harris Bradley as a co-partner, but was, on her motion or defense during the suit, dismissed out of the action. The evidence shows that Harris Bradley had failed once before when engaged in the same business, and that it was reorganized and conducted in the name of Adam Bradley Grocery Company, Adam Bradley being the infant son of Rhoda Bradley. He claims to have managed the business but admits that both worked in the store, she attending to the business by clerking when he was absent or out at work.

Both Mr. and Mrs. Bradley swear that the $200.00 paid for

the stock at the sheriff's sale was borrowed by Mrs. Bradley from her husband's brother Hi Bradley, and that she has since paid part of it back in groceries and in cabbage and other produce. How much has been paid on this debt she did not remember, and no books of accounts were produced to show the state of the account between them. When asked on cross-examination where she got the money deposited in the bank out of which the check was paid, her answer was: "I guess I got the most of it in trading, sold goods for it. Q. I notice the check given there is dated a short time after you bid in the store. Had you bought any goods previous to this order? A. I don't remember whether I had or not." And when asked whether she had any goods in the store when she gave the order on defendant, she answered: "Yes, sir; I had in there what I hadn't sold out after I bid it in." And asked whether she had in there half the goods she bid in, she answered: "I don't know whether I had or not. I sold all I could that the people wanted."

The evidence of the sheriff in Kentucky who sold the goods to Mrs. Bradley is not without significance. He says that Hi Bradley paid him the money, not Mrs. Bradley. He did not know that the money was ever in the hands of Mrs. Bradley; in fact the way he remembered it was that it never was in her hands. It was his understanding, he says, that she borrowed it from Hi Bradley. Hi Bradley was not examined or brought on the witness stand by either party. Whether he was a man of substance and had money to loan, and whether in fact he ever loaned Mrs. Bradley any money is not shown by his evidence; nor was the loan, if made, evidenced by any note or writing, or secured in any way, so far as shown. With respect to the money paid for the stock of goods, when asked if he knew whose money his wife paid for them, Harris Bradley answered: "Yes, sir; I reckon I do. I know who my wife borrowed it off of. Q. Who? A. Hi Bradley. Q. Who paid Hi Bradley this money back? A. Rhoda Bradley. Q. It was paid by money that came out of the goods that was sold? A. I guess it was. Probably she might have had some money, or might have

been paid out of the goods. I don't know. Lots of times the women get money and the men don't know anything about it. She peddled up there one fall and sold beans and things and probably saved some money, and then we paid her for cooking for us up there one fall,—me and Billy Shepherd and Hi Bradley. She could have saved that up and held it over. That has been three or four years ago.'' Mrs. Bradley, however, says that when she bought the store she didn't have much money or she wouldn't have been borrowing.

It is not for us to say in the first instance what the evidence proves, but we think it should have been submitted to the jury. The transactions by which the plaintiff became possessed of a business formerly operated in the name of her infant son, but admittedly the property of her husband, put upon her the burden of proof of establishing clearly her right and title thereto and to prove that the money which she claims to have given for the stock and business was her sole and separate estate. The rule of law, often repeated, in such cases is that where transactions of this character are between close relatives and may be highly prejudicial to the rights of creditors, the wife, if she be the beneficiary, and being possessed of the evidence to show clearly the transaction as she claims it to have been, must produce it. The burden is upon her, not only to produce the evidence, but to prove the facts clearly and fully. Her failure to produce evidence which was within her reach, itself constitutes a badge of 'fraud. *Mauch Chunk National Bank* v. *Shrader,* 74 W. Va. 310, 315, and the numerous cases therein cited. Hi Bradley, from whom the plaintiff claims to have borrowed the money to buy the stock of goods, would have been an important witness for her; and if she gave him any evidence of her alleged loan, that would have been important evidence on the question of the bona fides of the transaction. She had it within her power also to produce the officers of the bank where she or some one had deposited the money against which she drew the check to the defendant company, to show when and the form of the deposit. She failed to show clearly that the

money with which she bought the goods and the money credited to her in the bank was her money and not the money of her husband or of the business run by him in the name of their infant son.  Considering the character of the evidence adduced and relied on, her failure to produce other evidence within her power, we think the case was one which should have gone to the jury' with proper instructions on the law applicable in such cases.

In view of the character of the evidence adduced and the failure of the plaintiff to produce other evidence as indicated and the relationship of the parties to the transaction, we do not think the court would have been justified, if the verdict had been against her, in setting it aside and awarding her a new trial.  Where such is the status of the case the court is never justified in directing a verdict.  *Smith* v. *Railway Co.*, 48 W. Va. 69; *White* v. *Hoster Brewing Co.*, 51 W. Va. 259; *Norvell* v. *Railway Co.*, 67 W. Va. 467; *Booker* v. *Coal Corporation*, 90 W. Va. 643. We are therefore of opinion that the court erred in so directing a verdict, and that the judgment should be reversed, the verdict set aside and the defendant awarded a new trial, and it will be so ordered.

*Reversed and remanded.*