# CHARLESTON.

## WARD *v.* WARD'S HEIRS.

Submitted January 15, 1895—Decided April 13, 1895.

1. TENANCY IN COMMON—OCCUPATION BY A COPARCENER.

   By common-law, one joint tenant, tenant in common, or parcener using the common land exclusively, but not ousting or excluding his co-owners, is not chargeable to them for use and occupation; but this rule has been changed by section 14, chapter 100, Code, as to joint tenants and tenants in common, but not as to parceners.

2. TENANCY IN COMMON—OCCUPATION BY COPARCENER.

   A coparcener, merely from sole occupation of the premises, is not chargeable in favor of coparceners, unless he excludes them.

3. TENANCY IN COMMON—OCCUPATION BY CO-PARCENER—IMPROVEMENTS BY COPARCENER.

   Where it is proper to allow a coparcener for improvements, a charge for use and occupation may be set off against the improvements.

4. TENANCY IN COMMON—IMPROVEMENTS BY COPARCENER.

   Permanent improvements made by one coparcener, without request or agreement of others are not chargeable to the others personally or upon their shares in the land; but if made by their request or agreement, they are a debt upon them, and a lien on their shares in the land.

5. TENANCY IN COMMON—CONTRIBUTION BY COPARCENER—REPAIRS BY COPARCENERS.

   One joint tenant, tenant in common, or coparcener can compel others to contribute to make necessary repairs to a mill or house, after request to assist and refusal. But this compulsion is as to future repairs, not those already made by one of the co-owners. This compulsion only applies to mills and houses, not to fences, or other repairs to other properties.

6. TENANCY IN COMMON—IMPROVEMENTS BY COPARCENER—PARTITION.

   In partition the part improved, if it can be done without injury to others, should be assigned to the improver; but when this can not be done, the cost of improvement can not be charged to him to whom it goes.

7. TENANCY IN COMMON—IMPROVEMENTS BY COPARCENER—PARTITION.

Where, however, the property is not susceptible of partition, and must be sold to divide the proceeds, the coparcener who made repairs and permanent improvements shall receive out of the proceeds that amount by which the property, at the date of sale, remains enhanced in value from the improvements, not their original cost.

8. CHANCERY PRACTICE—COMMISSIONER'S REPORT—EXCEPTIONS.

Where there is no exception to a commissioner's report, except as to error on its face, it is taken as admitted by the parties to be correct, both as to the principles and the evidence on which it rests, and the court will not look into it, but must act on it as so admitted, except as to infants and persons *non compos.* If excepted to not later than the first term after its return, or later by leave of court, the admission of its correctness ceases, and the court will examine it; but on the hearing of such exception, unless taken within ten days after completion of the report before the commissioner, no evidence before him can be used, unless he has made it a part of the report, or certified it, or the court requires him to certify such evidence by order, in which cases it may be used to sustain the exception; but depositions taken after the return of the report can not be used to overthrow the report. They can be used only to support a motion to recommit the report.

9. CHANCERY PRACTICE—COMMISSIONER'S REPORT—EXCEPTIONS.

Error on the face of a report may be taken advantage of in the lower or appellate court, with or without exceptions.

10. CHANCERY PRACTICE — COMMISSIONER'S REPORT — EXCEPTIONS.

Where exceptions is taken to a commissioner's report before the commissioner, within ten day's after its completion, it is his duty to certify the exceptions and evidence before him relating to the exceptions, with such remarks as he may see proper to make, in order that the exceptions may be heard by the court upon such evidence. He should so certify the evidence as to show it to be the evidence sent up.

11. CHANCERY PRACTICE—COMMISSIONER'S REPORT—EXCEPTIONS.

Where such exception has been so taken within ten days, the party excepting, or the adverse party, may take further evidence before the return of the report, and upon it the commissioner may amend his report, or make an amended report, as may suit the case, and then return his report and amendment, if any, to the office of the court.

W. R. D. DENT for appellant, cited 21 W. Va. 262; 24 W. Va. 524; 27 W. Va. 220; 38 W. Va. 677; 21 N. J. Eq. 11; 50 Me. 253; 91 Pa. St. 438; 79 Ky. 148; 9 N. J. Eq. 566; 58 Miss. 241; 80 Ala. 395; 11 Am. & Eng. Enc. Law, 1104, 1107.

B. F. MARTIN and FRANK W. WOODS for appellees, cited 8 W. Va. 135; 70 Md. 42; 35 W. Va. 721; 27 W. Va. 639; 28 W. Va. 715; 24 W. Va. 525; 27 W. Va. 227; 19 W. Va. 459; 1 Hen. & Mun. 404; 78 Va. 720.

BRANNON, JUDGE:

Maria Ward died seised of a hotel property known as the "Ward House," in the town of Grafton, leaving a husband and six children. Her husband, George W. Ward occupied the property as tenant by the curtesy from February, 1878, when his wife died, until December, 1880, when he died. Four of his children lived in the hotel with him, the plaintiff, L. E. Ward, John B. Ward, Mrs. Broyles, and Archibald Ward. Before the father's death, and for eleven years afterwards, the plaintiff, L. E. Ward, occupied a stable on the property as a livery stable, and after his death Mrs. Broyles and husband occupied the hotel. Mrs. Broyles, by purchase from coparceners at different times after her father's death, became owner, including her own share, of five-sixths of the property.

L. E. Ward brought this suit in the Circuit Court of Taylor county, alleging that in 1879 he and several others of the parceners, seeing that the property was badly in need of repair, almost entirely rebuilt and greatly enlarged the hotel, at great expense, he furnishing a large amount of means, labor, and material, of the amount of one thousand five hundred and thirty eight dollars and twenty six cents, and that Archibald F. Ward and Lloyd M. Broyles, for his wife, furnished material and labor, for which amount expended by him he claimed compensation. He further alleged that for several years Broyles and his wife had the possession and use of the hotel property, except the stable, without payment of rent, but had paid taxes, and put some repairs on the property from time to time as needed, and that he, the plaintiff, had occupied the stable without payment of rent. He prayed that an account of the rent and improvements be taken; the amount due him and others be decreed; that the property be rented or sold to satisfy those charges, and also that the property, not being susceptible of partition, might be sold,

and the proceeds divided. The other parties resisted this demand of the plaintiff for improvements, saying that such improvements were made by their father while in possession as tenant by the curtesy, and any charge by the plaintiff was against him, not against his coparceners, as they never assented to such improvements, and neither they nor their property were liable therefor. The case was referred to a commissioner, and he reported a large sum as due the plaintiff from Mrs. Broyles, one of the parceners, for rent and improvements. The court disallowed all claim by the plaintiff for improvements or rent, and, declaring the property insusceptible of partition, directed its sale. The plaintiff appealed.

*First*, let us consider the subject of rent. Are those of the heirs who occupied the property after the end of the father's estate by the curtesy liable to pay rent, or rather compensation for use and occupation? At common-law neither a joint tenant, tenant in common, nor coparcener, occupying the common property, and thus taking more than his share of the rents and profits, can be made to account to his fellows, unless he has been appointed bailiff or receiver by his fellows. Each one has right to enter and use the land, and this fact can not be impaired by the fact that others absent themselves or do not claim their right to a common enjoyment. Unless the one in possession denies the right of the others to enter and enjoy the estate, or agrees to pay rent, nothing can be claimed of him. It is presumed that the others consent to his use. He can not call on the others to help him farm or otherwise use the property, and, in case of loss from failure of crops or other cause, he can not call on the others to contribute to the loss. If the others do not wish to occupy the premises with their co-owners, the remedy of partition is at hand, or, if the property be indivisible, the court will sell it, and divide its proceeds. Lomax, Dig. 501, 481; 2 Minor, Inst. 437, 429; Freem. Coten. § 269; note to *Early* v. *Friend*, 78 Am. Dec. 665. This is the view stated in Freem. Coten. § 258; *Gayle* v. *Johnston*, 80 Ala. 395.

By section 14, chapter 100, Code, it is provided that an action of account may be maintained "by one joint tenant, or

tenant in common, or his personal representative, against the other for receiving more than comes to his just share or proportion, and against the personal representative of any such joint tenant or tenant in common." This statute originated in England, and there and in a majority of the American states it has received the construction, which I would think the proper one, that merely by exclusive occupation and use one tenant in common or joint tenant does not become liable to account to others, but only where he receives rents or proceeds of the estate from strangers. Freem. Coten. § 274; note to *Early* v. *Friend,* 78 Am. Dec. 665; *Chambers* v. *Chambers,* 14 Am. Dec. 665 and note. But in *Early* v. *Friend,* 16 Gratt. 21, which was decided at a date making it binding authority here, it is held that one tenant in common may sue his cotenant, who has occupied the whole property, for an account of rents and profits. He is accountable whether he receives rents and profits from strangers, or receives them by occupying the premises himself, with interest from each year's close. *Rust* v. *Rust,* 17 W. Va. 901, holds just the same. In *Dodson* v. *Hays,* 29 W. Va. 577, syllabus point 2 (2 S. E. Rep. 415) this doctrine was somewhat qualified in the holding that where the property is such as to admit of use by several, and less than his just share is used by one tenant in common in a manner not hindering or excluding the others from the use of their shares, he does not receive more than his share, within the meaning of section 14, chapter 100, Code, and is not accountable for the profits of that portion owned by him to his cotenants.

But it will be observed that this statute in terms applies to joint tenants and tenants in common, and does not mention parceners. Does the statute apply by analogy to them? Its letter does not. Joint tenancy, tenancy in common and coparcenary are the three notable joint estates, and to them alike the common-law rule applied that one cotenant using alone the common property was not liable to account therefor, and the legislature in changing the rule leaves out coparceners, and expressly names joint tenants, and tenants in common. Why do this unless it intended to exclude coparceners from the statute? Could there be a stronger instance of the ap-

plication of the principal of construction that "the mention
of the one is the exclusion of the other?"   The lawmakers
did not intend that the sister or brother remaining under the
roof of the old home, or making bread from the home farm
after the departure of parents, should every day be running
in debt to the others.   While it might be reasonable as be-
tween joint tenants or tenants in common, often strangers,
it would not be so between brothers and sisters.   There was
reason for omitting parceners from the statute.   It is hu-
mane and reasonable to assume that brothers and sisters
do not object, but consent, that brothers and sisters continu-
ing on the premises are still at home, and not expected to pay
rent.   Such we know to be the uniform course between mem-
bers of a family.  The same presumption does not hold between
two who own as joint tenants or tenants in common.   Thus,
I think neither the letter nor reason nor the equity of the
statute applies to parceners.   Prof. Minor, admitting that
parceners are not within the letter of the statute, says that
"it is believed" that the common-law rule of non-liability has
been changed by construction of the statute, partly because
courts of equity before the statute of Anne in England had
obliged parceners to render an account, and partly from the
irresistible reasonableness of the thing, and partly because
of the force of the analogy between joint tenants, tenants in
common and coparceners.  2 Minor Inst. 437 (506).  I have ex-
amined the authorities there referred to, and find that this
opinion rests on *Drury* v. *Drury,* decided in the year 6 of
the reign of Charles I., which does seem to sustain the posi-
tion, as it makes one of two heirs account to the other heirs;
but the report in 1 Ch. R. 48, 49, is so meager that we can not
tell how far the element of ouster or exclusion may have en-
tered into the case.   *Dean* v. *Wade, Id.,* decided ten years
later, simply adopted *Drury* v. *Drury* expressly as a preced-
ent.   No facts are given.   Eq. Cas. Abr. c. 2, tit.   "Account"
(A) p. 5, note, so far from sustaining Prof. Minor, is against
his position, as it limits the equity jurisdiction to joint ten-
ants and tenants in common, and that under the statute of
Anne, not mentioning coparceners.   It is but a note citing
no case.   Though Kent is cited by Prof. Minor, Kent does

not insert it in his text. It is an annotator's note, based on the old English case and the note in Eq. Cas. Abr. just mentioned, and the Kentucky case of *O'Brannon* v. *Roberts*, below referred to. Lomax refers to the same authority. Now, as to the Kentucky case cited by Prof. Minor (*O'Brannon* v. *Roberts*, 2 Dana 54) it supports Prof. Minor's inclination to' an opinion. But examine the case. The opinion plainly shows that Judge Nicholas hesitated to hold that one parcener may be held to account in equity for profits and rents of land exclusively occupied by him, saying that St. 3 & 4 Anne, the source of ours, applied only to joint tenants and tenants in common, but he felt bound by a former Kentucky case (*Graham* v. *Graham*, 6 T. B. Mon. 562 (17 Am. Dec. 166). When that case is examined, it has nothing whatever to do with the point, for it was a case where one child claimed exclusively in severalty as purchaser of their father by a forged title bond. It was a case of ouster, where one heir shut out another by adverse claim. The syllabus itself states that he held in severalty. I must refer to *Chinn* v. *Murray*, 4 Gratt. 348, cited by Minor. It is peculiar. A judicial partition was made in 1820, which lay unconfirmed till 1836, and on an appeal as late as 1848 it was reversed. The parties took possession and improved the parcels under the partition as their own. Improvements were allowed as far as they added to the present value, and rents and profits were charged, or rather set off. This case can not be said to hold the clear proposition that a coparcener, merely from occupation of the premises, receives more than his share, under the said Code section, by construction. It is a case of charge to offset improvements, which I elsewhere say can be done. The parties had to be allowed improvements, because made under the mistaken belief that they owned the parcels in severalty, under a partition so long acquiesced in, and, claiming improvements, they must be charged for use and occupation. Where it is proper to allow improvements, rents and profits should be charged. Where it is proper to charge rents and profits, improvements should be allowed. The decree in the case says that, "under the circumstances of the case," justice required an allowance for improvemnts, and

then said that rents and profits be charged. The opinions do not touch on the point. They do not consider whether the said statute naming joint and in common tenants includes within its equity coparceners. The matter was not discussed, not even mentioned. The Virginia cases sustaining an account are cases of joint tenants and tenants in common. So the two West Virginia cases cited above. If there is a case in either state pointedly holding that a mere sole use by a coparcener subjects him to account, I have not seen it, except *Fry* v. *Payne,* 82 Va. 759 (1 S. E. Rep. 197) holding, by a mere remark, a parcener liable to account for sole use; but there was no consideration of the point whether the statute applied to parceners, but it was assumed it did. The distinction between parceners and joint tenants or tenants in common was not thought of.

So, I do not think these parceners could by law demand an account of use and occupation. But, in addition, all the parceners, save one, including the plaintiff, by uniting in the form of a letter signed by all as an agreement, declared that they did not wish the hotel to go into the hands of strangers, and wished Broyles, then in possession, not to leave it, but to keep it and use it, and insure and paint and repair it, and, after all the improvements contemplated by it had been made, if he thought the heirs were entitled to anything he could pay; but if he thought they were not, then pay nothing, leaving it to him, and they would be satisfied. This was April 17, 1884. It spoke no intent to charge back rent, but by plain implication disclaimed it, and disclaimed an intention to charge in future. The suit would not change this. Mrs. Broyles still had right till partition or sale, so she did not exclude an actual effort at entry and enjoyment by others. Let the question of liability for use and occupation be settled as it may on general principles of law. This agreement in this case repels a charge.

Next, as to improvements claimed by L. E. Ward. Can he be allowed for them? One joint tenant or tenant in common at common-law could compel others to unite in the expenses of the necessary reparation of a house or mill owned by them, though the rule is limited to three parts of the common prop-

erty, and does not apply to fences enclosing wood or arable land. This right was enforced by a writ *de reparatione facienda.* It did not apply to past repairs, and could only be resorted to after request to unite in the repairs and refusal. 1 Lomax, Dig. (504) 648; 2 Minor, Inst. 430; 4 Kent. Comm. 370. It was confined to a mill or houses, because it is for the public good to maintain houses and mills, which are for the habitation and use of men—as Lord Coke said in Co. Litt. 200b; *Id.*54b. "If there be two joint tenants of wood or arable land, the one has no remedy against the other to make inclosure or reparation for safeguard of the wood or corn. *Bowles' Case,* 11 Coke, 82. I have no doubt this old common-law writ, though disused, might yet be resorted to. It applies to future, not past, repairs. Freem. Coten. § 261; *Calvert* v. *Aldrich,* 99 Mass. 76. I think it can be safely laid down, with the exception stated, no joint tenant, tenant in common, or parcener can compel his cotenant to make improvements, or maintain an action against him personally to compel him to contribute to the expense of improvements made upon the estate, without his consent, express or implied, or fix it as a lien on his interest in the estate. One cannot improve his fellow out of his estate. He has voluntarily put improvements upon land of another, knowing his right, and he can not impose a debt on him or his estate without his consent. Freem. Coten. §§ 261, 262; *Aldrich* v. *Husband,* 131 Mass. 480; *Id.* 135 Mass. 317; *Nelson* v. *Clay,* 23 Am. Dec. 387; *Hancock* v. *Day,* 36 Am. Dec. 293; *Scott* v. *Guernsey,* 48 N. Y. 106; *Calvert* v. *Aldrich,* 99 Mass. 74; *Mumford* v. *Brown,* 16 Am. Dec. 440. It is not the case of one making improvements in good faith believing the land to be his. The common-law denied such a one relief, and it is only allowed by statute. Code, c. 91. It seems that, where a tenant in common or joint tenant is called on for rents and profits in equity, he may deduct ordinary repairs on the principle that he who asks help from a court of equity must do equity. *Hannan* v. *Osborn,* 4 Paige 343; *Ruffners* v. *Lewis,* 7 Leigh 720, 743; 2 Minor, Inst. 420; 1 Story, Eq. Jur. § 655; *Graham* v. *Pierce,* 19 Gratt. 28, syllabus 6; Freem. Coten. § 279. Where partition is made, the part improved should, if not prejudicial to others, be allotted to the one who

made improvements, estimating its value without improvements. 2 Minor Inst. 420; *Patrick* v. *Marshall,* 4 Am. Dec. 670; *Nelson* v. *Clay,* 23 Am. Dec. 387. But, if this can not be done, he to whom the improvement falls does not have to pay for it. *Nelson* v. *Clay, supra.* Where improvements are made with consent of the cotenants, they are personally bound, and the demand is a lien on their shares. *Houston* v. *McCluney,* 8 W. Va. 135; Freem. Coten. § 262.

It seems to be claimed in the brief of counsel that the letter to L. M. Broyles, written by some of the heirs, justifies a charge by L. E. Ward for improvements. After requesting him not to leave the house, but to stay, it recited what he ought to pay, *viz.* keep and use the property, have it insured, keep taxes paid, keep the house in good repair; and then said "Go to work and have the house painted and repaired as in your opinion you think it should be; and, after all this improvement, has been made, if you think, after calculating the expenses of the improvements and the taxes, *etc.,* which you may have paid heretofore, that the heirs are entitled to anything, then you can arrange and pay them their proportion; and if you think that nothing is coming to the heirs after paying for painting, *etc.,* then we are satisfied." This did not refer to improvements made by L. E. Ward before the letter, but to future improvements. The word "paid" refers to taxes. Although it be law that one coparcener can not without consent make permanent improvements, and charge his coparcener or his share with their cost, where the estate is partible in kind, as a tract of land, how is it in the case of a house or land which is impartible in kind for any reason, so that it has to be sold in order to effect a partition, as was the case in the present instance? Is there no difference here? Circumstances alter cases. Is it right for a court of justice to sell the land greatly increased in value by the expenditure of one brother, and put the money into the pocket of another with its eyes shut to the fact that the property brought more, a great deal, by reason of the new house built by one of the brothers? Ought it not to be ascertained how much the value was enhanced by the improvement, and pay the amount of the enhancement to the one whose means produced it, and

divide the balance? This is different from the case where there is division in kind. In the latter case, to charge the brother who did not consent to the improvement is to force upon him a debt he did not assent to, and to mortgage his estate with a debt which he can not pay and which will take away his patrimony. One ought not to be made a debtor without his consent; but, where the whole is to be converted into money and distributed, another principle is admissible, doing harm to no one and justice to all. The others get just what they would have received without the improvements, and the one making them is reimbursed. I have observed that in Illinois this doctrine has been frequently applied. *Louvalle* v. *Menard*, 41 Am. Dec. 161, and note; *Howey* v. *Goings*, 54 Am. Dec. 427; *Dean* v. *O'Meara*, 47 Ill. 120. And on further search I find this exception approved in *Moore* v. *Thorp*, 16 R. I. 655 (19 Atl. 321). I think *Elrod* v. *Keller*, 89 Ind. 382, would also allow it in such a case as we have in hand. *Alleman* v. *Hawley*, 117 Ind. 533 (20 N.E. Rep. 441) does. It does not follow that the original cost of improvements be given, but the actual enhancement of value at time of sale by reason of improvements is ascertained. See opinion in last cited case, and in *Moore* v. *Williamson*, 10 Rich. Eq. 328. The opinion in the last case very properly says that if the cost of improvements be allowed, "it would subject the owner to the want of judgment or economy of the improver, and render him liable to be built out of his land by the improvidence of his tenant." I would add that the improvement may have depreciated from some time before the sale.

It is objected that the bill does not charge a request on the part of the cotenants for the improvements. It would be necessary to charge them otherwise than as indicated above, but it is not necessary to so charge them; that is, as a simple increase of value.

It follows from what has been said that, while there could be no claim for use and occupation against Broyles and his wife, yet the decision of the court below is wrong in wholly disallowing all claim for improvement made by the plaintiff out of the proceeds of sale, in the manner above stated, which

was directed to be made because the property was found insusceptible of partition.

A reference was made to a commissioner, and his report charged rents and profits to Mrs. Broyles for the hotel, and to the plaintiff for the stable, and charged Mrs. Broyles, as the owner of five-sixths of the property, with five-sixths of the money spent by the plaintiff in improvements. The commissioner made a part of his report a deposition of the plaintiff, and, as the report imports, there was no other oral evidence before him. Taking that deposition alone, it supports the report as to the charge for improvements, as it shows consent on the part of the cotenants. No exception was made within ten days, and the plaintiff contends that the result reached and returned by the commissioner must be taken as correct, and can not be impaired by after exceptions and evidence afterwards taken, and that the court could not, upon depositions afterwards taken, overturn and reject the result reached by the commissioner, but must confirm or recommit. *Ward* v. *Ward,* 21 W. Va. 262. The plaintiff's deposition must be considered a part of the report—a part of its face. *Lynch* v. *Henry,* 25 W. Va., opinion page 424; *Kester* v. *Lyon,* 40 W. Va. 161 (20 S. E. Rep. 933.) It is plain that if we decide the exception only by the face of the report, including that deposition, we must overrule it, because the deposition sustains the report in the point of view of fact. But after the report, and we will say after the exception, the defense took depositions. They deny the statement of the plaintiff's deposition, that the other heirs agreed that the plaintiff make the improvements. The court read them on the hearing. Could they be read to impair the finding of the report in favor of the plaintiff as to the improvements? This may seem at first an immaterial question, since as above stated, the plaintiff ought to be allowed out of the sale an amount equal to the amount of increase of value at the time of sale imparted to the property by the improvements; but a second thought makes it material, in this: that if there was an agreement between the parties that the improvements be made, that would entitle the plaintiff to perhaps a larger recovery, that is, the original cost of im-

provements with interest from date when made, while if there was no request, he would get out of the sale the mere increase of value. Can these depositions be read then? If there had been no exception, they could not, as, without exceptions, a report is taken, as to adult parties, to be correct, and will not be examined by the court except for errors on its face. *Kester* v. *Lyon*, 40 W. Va. 161 (20 S. E. Rep. 933.) But where there is an exception, but not within ten days, how is it? Where the party says that he does not intend to be regarded as admitting the correctness of the report, but excepts to it, and appeals to evidence subsequently presented in the case, can he overthrow the report with that evidence? Is he unalterably bound by the report, if not erroneous on its face? If he had excepted within ten days, he could have taken other evidence, and the commissioner could retain the report to await it, and upon it make remarks, or even make a further or amended report. I think this is so because section 7, chapter 129, Code, says that if exceptions be taken within ten days, the commissioner shall with his report "return the exceptions, and such remarks thereon as he may deem pertinent and the evidence relating thereto." Judge Green expressed the same opinion in *Lynch* v. *Henry*, 25 W. Va. 423. I have some question as to the last matter, but think it tenable, and that the rule may be convenient in practice. The Code, after providing for exceptions before the commissioner within ten days, goes on to add: "But any party may except to such report at the first term of the court to which it is returned, or by leave of the court after such term." What does this mean? It may be asked of what use such exception, if evidence taken after the return of the report can not be read? The answer can be given, that the party may think the commissioner has reached the wrong conclusion on the evidence, and, desiring to have it reviewed, desires to except to get rid of the admission of its correctness which would operate against him from silence, and designs to ask the court to review the evidence, if it has been made part of the report, and, if it has not been, then to ask the court to order the evidence to be certified to be read with his exception, which he may do if he has been prevented from excepting within the

ten days. *Arnold* v. *Slaughter,* 36 W. Va. 590, syllabus point 4 (15 S. E. Rep. 250).

If we say that after a report has been made a party may go on and take depositions, and have them read, we introduce confusion in practice, install a bad practice, and put a premium upon negligence and delay. A case is referred to a commissioner. He gives notice, and proceeds to execute the order of reference. The parties ought to attend before him. They can be much better heard upon the facts before a commissioner than in court. It is the most important proceeding in the case, save, perhaps, the final hearing; in many cases even more important than that. If the action of the commissioner is unsatisfactory, the party can, within ten days after he has finally announced his conclusion by a completed report, except, and, if he does not want more evidence, ask the commissioner to certify the evidence to the court for its review; and if he is surprised at the inferences drawn by the commissioner upon that evidence, and thinks he can strengthen his case by additional evidence, he can except within ten days, and take more evidence, and under proper circumstances, the commissioner will delay returning his report to enable the party to do so, as the statute giving him right to take such evidecce ought to be liberally construed to promote a fair, full hearing; and then the commissioner can report on such evidence, or make an amended report, or send up his original report, the exceptions, and all the evidence, old and new. After all the toil before a commissioner, after he has given his decision, and after the full opportunity for a hearing before him, a negligent litigant ought not to be allowed to reopen the case, often to the inconvenience and surprise of the other party. If so, where the utility of this tedious hearing before that important auxiliary of the court, the commissioner? It would be an almost meaningless performance. We do not think the Code means such an reopening by giving right to except at the first term after the report. We think such after taken depositions can not be read on the hearing to impair the report, as was done in this case. We think the only office they can perform is to support a motion for a recommital of the report, or to suggest

to the court, where it appears contrary to justice to confirm the report, the propriety of such rehearing before the commissioner; but on 'such evidence the court can not overturn the report, or remodel or restate the account, which may work great injury and surprise to the other party, but must recommit the report, if dissatisfied with it. *Ward* v. *Ward*, 21 W. Va. 262.

I have said this much upon this matter of commissioners' reports because of the importance, in every day's practice, of proper understanding as to proceedings before commissioners, and the frequent controversies arising upon them. Under these views, it would have been error to overturn the report, based on the theory that the improvements were made with the consent and agreement of the coheirs, but for the fact that the bill and amended bill have no allegation that the coheirs requested such improvements to be 'made or consented thereto. As this was not charged, the finding of the report is error apparent on its face, and vindicates the action of the court against the argument that only by using the after taken depositions it rejected the finding of the report. Does. it thence follow that the total disallowance of anything to the plaintiff is justified by this omission in the bills? By no means. The bills charged the fact of the improvements, and that the hotel property itself was not susceptible of partition, and must be sold, and the same decree which disallowed all compensation for improvements subjected the property to sale in order to divide its proceeds, and upon those facts the plaintiff was entitled to something on the principle of increased value above stated. Nor ought the court to have confirmed the report and decreed its full finding, because it allowed, not an amount for increased value, but the account of expenditure by the plaintiff in improvements, and because it charged use and occupation. There ought to have been a recommittal to ascertain the amount of increased value, viewing the case on those facts. The court could not make a new statement. If the plaintiff amended his bill by the allegation wanting, he could have claimed the account filed by him, with interest, if he could succeed in sustaining the theory or contention that his co-

parceners agreed to the making of improvements by him, but without 'such allegation he 'could not.    He can still amend his bill to that effect, if he wishes to do so.

It is contended that in no view can the plaintiff claim anything at all for the improvements, since they were made in 1879, while the father yet lived, and his estate by the curtesy existed, and the heirs had only an 'estate in revision, not in possession, and the improvements were made for and by the father. All the children, save two daughters, continued to reside in the home as a family with their father, after the mother's death, and the existence of this curtesy would not prevent any reversioner, by agreement with the others, from making improvements beneficial to the inheritance, and charging the property with them. Nor would it debar one from claiming such increase of value in the reversion or inheritance as his improvements imparted. Of course, were it shown that the plaintiff contracted with the father to make them; if the father became his debtor, his sole debtor, for them, and he looked to the father for pay—he could claim nothing from the heirs. I do not consider that the evidence at present shows such a case as enables us to say this.

So much of the decree complained of as disallows the claim of the plaintiff or Lavina Broyles or L. M. Broyles for repairs, improvements, or rents is reversed, and the cause remanded for further proceedings in respect thereto, according to principles above stated, so far as applicable, and further according to principles governing courts of equity in such case.