## CHARLESTON.

SOLESBERRY et al. v. VIRGINIAN RAILWAY CO. et al.

Submitted January 27, 1914.    Decided February 10, 1914.

1.  PARTITION—*Railroad Right of Way—Allotment.*
    A railroad right of way, acquired in condemnation proceedings to which but one of several cotenants of the land is a party, will not, in a partition sought by other co-owners, be allotted wholly to the condemnor, if the allotment operates to the serious injury or prejudice of such co-owners. (p. 643).

2.  SAME.
    Whether such allotment may be made depends upon the circumstances and conditions of each particular case. (p. 643).

3.  SAME—*Report of Commissioners—Presumption.*
    Where a report of partition made by commissioners is proper on its face, every reasonable presumption is in favor of its fairness. (p. 645).

4. SAME—*Railroad Right of Way—Allotment—Evidence.*
    A case in which, upon a proper application of the principles thus
    announced, such allotment was properly refused.  (p. 643).

Appeal from Circuit Court, Wyoming County.

Suit in partition by Thomas Solesberry and others against the Virginian Railway Company and others. From a decree for plaintiffs, the defendant named appeals.

*Affirmed.*

*G. A. Wingfield,* and *Brown, Jackson & Knight,* for appellant.

*Farley, Sutphin & Ward,* for appellees.

LYNCH, JUDGE:

Andrew J. Solesberry and his wife Esther were joint tenants of a tract of land, partition of which is sought by plaintiffs as children and heirs at law of Esther Solesberry, who died intestate in 1871. After his remarriage, Andrew and his wife, by deed dated in 1880, conveyed the entire tract to Edward Sizemore, through whom, by mesne conveyances, title finally vested in the Pocahontas Coal & Coke Company in 1901. Andrew Solesberry died in 1905. By condemnation proceedings, to which the coal and coke company was sole defendant, the Virginian Railway Company acquired a right of way through the land. It constructed a spur track on the right of way, and has continuously occupied it since for railroad purposes. Together asserting a claim to an undivided seven-sixteenths in the land, plaintiffs, as such heirs at law, brought this suit against the coal and coke company and the railway company.

The only controversy between the plaintiffs and defendants relates to the manner of making partition. Each concedes the rights and interests owned by the others. The peculiar and unusual characteristics of the land, its small area, the number of shares of the claimants, the location of the railroad right of way, and other conditions, render the partition difficult, and to some extent inequitable, whatever plan may be adopted, whether by division in kind, by sale, or otherwise. It is crescent in form, its length being approx-

imately two miles, and in width averaging about three hundred feet, its maximum width not exceeding five hundred feet. It is rough, steep, and unimproved. The railroad traverses the tract almost through its entire length, and the Guyandotte river flows through the land or along and near its tdge. The county road also prasses through it.

The commissioners appointed by the court to divide and allot the lands to each cotenant found and reported them as not susceptible of partition in kind, and recommended a sale and division of the proceeds. They were expressly directed to allot to the railway company its right of way, if in their opinion such allotment was feasible and could be made without prejudice to the interests of the plaintiffs. Upon exceptions by plaintiffs, which the court sustained, an order was entered recommitting the report to the same commissioners, with direction to make partition and assignment in kind pursuant to its former order. To the second report, made as directed, the defendants excepted; and, in support of their exceptions, they tendered a plat of the land, the accuracy of which was verified by the affidavit of the engineer who made it, showing a plan of division acceptable to defendants and, as they contend, just and fair to their co-owners the plaintiffs. The plan of partition thus suggested, if adopted, would have allotted to the railway company its right of way one hundred feet in width through the land, in so far as it is located wholly or in part on the tract, without compensation ascertained in the manner provided by law for condemnation proceedings, and without the right to the recovery of damages for the appropriation of parts of the lands assigned to some of the plaintiffs. But the defendants proposed that, if the plan suggested by them were adopted, an allotment of increased acreage out of the part assignable to the coal and coke company might be made by way of compensation for injury and damages allowable in condemnation proceedings. The plat and affidavit, together with the second report and defendants' exceptions, were again referred by the court to the commissioners for their examination and report.

As to the feasibility of the plan suggested by defendants the commissioners in their third report state: "Your commissioners would further respectfully report that, after going

upon the land and examining the same with reference to the affidavit and map filed by H. W. Walker, and after hearing all the evidence offered by both the plaintiffs and defendants, and after duly considering the affidavit and map of said H. W. Walker, and after again carefully viewing the land heretofore taken, and after again carefully viewing the land together, we are of the opinion that said land can not be partitioned in the manner suggested by the said H. W. Walker, or in any other manner so as to allot to the Virginian Railway Company and to the Pocahontas Coal & Coke Company all of that portion of said tract on which the railway company is located, without doing material injury to the other parties in interest. We further submit that we have at all times been mindful of our duty to protect the Virginian Railway Company as far as possible, without doing injury to the other parties in interest, and, with this in view, first allotted all of said tract of land lying on the south side of Guyandotte river, from the Virginian Railway, with the view of allotting, and did allot, to the Virginian Railway Company and the Pocahontas Coal & Coke Company as much land as practicable over which the railroad passes, as could be done without material injury to the other parties in interest. Your commissioners therefore hereby ratify and adopt their former report made in this cause on the 25th day of August, 1911, as their present report, and again report that the partition made therein is the most practicable as well as the only equitable method of partitioning said land between the parties in interest, without material injury and without reducing the value of the same and the different parts thereof.''

Every reasonable presumption is in favor of the report of partition made by commissioners, if proper and fair on its face. *Cross* v. *Cross*, 56 W. Va. 185. Hence, we must assume that the second and third reports in this case present a fair, equitable and just partition; or, as they say in their last report, that it ''is the most practicable as well as the only equitable method of partitioning said land between the parties in interest, without material injury and without reducing the value of the same and the different parts thereof''.

In this case, however, defendants rely upon the rule stated

in Hogg's Eq. Prin. 500, and *Ward* v. *Ward*, 40 W. Va. 611, that where a co-tenant has placed valuable improvements upon the property the part so improved shall be assigned to him, if it can be done without injury to the others. Is an improvement made by a railroad company, even if a cotenant under the circumstances of this case, such an improvement as entitles the railroad company to invoke the benefit of these decisions?

The right of a cotenant to the improvements made by him is not absolute. It is conditional, as the cases cited show; the condition being that it work no injustice or injury to other cotenants. The improvements are to be considered by the commisioners as a circumstance to which due weight must of course be given, but which may be counteracted by other considerations having equal weight and importance as affecting the rights and interests of others in the same relation. It is an equity, but, as such, will not be enforced to the detriment of another party to the partition. *Carper* v. *Chenowith*, 69 W. Va. 729; 16 Am. & Eng. Enc. L. 113; *Ward* v. *Ward, supra;* Freeman, Cot. & Part., §509. The author last cited says: "It is the duty of a court of equity to cause these improvements to be assigned to their respective owners whose labor and money have thus been inseparably fixed on the land, so far as can be done consistently with an equitable partition".

But, to be entitled to an allotment containing improvements, a cotenant must have placed the improvements thereon, and not one not standing in that relation. This leads to the inquiry whether the railway company is a cotenant with the plaintiffs. In *Jewett* v. *Stockton*, 3 Yerg. 492, 24 Am. Dec. 524, it is held that a deed by one cotenant conveying a specific portion of the common estate by metes and bounds is void as against his cotenant, to whom the portion so conveyed is subsequently set apart by partition. Other decisions, however, are to the effect that, while the deed is not void, it can not operate to the prejudice of a cotenant who did not unite therein. *Gates* v. *Salmon*, 35 Cal. 576, 95 Am. Dec. 139; *Ballou* v. *Hale*, 47 N. H. 347, 93 Am. Dec. 438; *Dennison* v. *Foster*, 9 Ohio 126, 34 Am. Dec. 429; *Cox* v. *McMullin*, 14 Gratt. 82; *Buchanan* v. *King*, 22 Gratt. 414, 422; *Worthington* v. *Staunton*, 16 W. Va. 208, 235. The case of *Boggess*

*v. Meredith,* 16 W. Va. 1, 27, adopting the same view, holds that ''if one tenant in common sells and conveys to a stranger, without the knowledge or consent of his co-tenant, the entirety, or an undivided moiety of a portion of the land defined by boundaries, such sale and conveyance do not make such stranger a cotenant in the lot purchased with the other co-tenant of the entire tract, so as to give an absolute right to have a portion of it assigned to him''; but that, in making partition, the part so conveyed ought to be assigned to the purchaser, as the share of the cotenant vendor, if this can be done with justice to the other cotenants or if they assent thereto. In referring to the opinion of Judge Allen in *Borbinette* v. *Preston,* 2 Rob. 278, Judge Green says: ''It seems to me that the language used by him, 'that the grantee would be tenant in common with the cotenant of his grantor, to the extent of the interest conveyed', must be given a qualified meaning, as it would seem he intended by what immediately follows and from the character of the case then before the court. To suppose he meant that the grantee became a cotenant in the particular tract laid off without his consent express or implied with the cotenant of the grantor to all intents and purposes, so as to give such grantee an absolute right to sue for a partition of the parcel conveyed to him, would be a direct contradiction of what he had just said, that 'the deed was ineffectual to pass the title as against the cotenant, and would be inoperative, so far as the rights of the cotenant were prejudiced'. * * * It is certainly law, that a conveyance by one cotenant of a part of a tract specified by metes and bounds can not give the grantee any greater right thereto than held by his grantor; and, as he could not exclusively occupy the parcel of land he conveyed, so his grantee can have no such exclusive right; and, as the grantor of such parcel could not demand that the whole or any part of such parcel should be set off to him, so his grantee could acquire no such right. Yet the better authorities hold that he has rights, which will be considered by the court in making the partition of the whole tract, and which will be respected, so far, and so far only, as they can be without prejudice to the original cotenant of the entire tract. In making such partition, if the parcel so sold and conveyed by

one tenant in common can be assigned to the purchaser as a part or the whole of the share of his grantor without prejudice to the cotenant of the grantor in the entire tract, the court will so assign it, thereby making the purchaser's title perfect''.

The result of the condemnation proceedings by the railway company against the coal and coke company, if effectual, was to vest title in fee in the entire strip condemned. It did not, and could not, have the effect of making the railway company a cotenant with either the plaintiffs or the codefendant. It had no interest in any other part of the tract, because limited to its right of way, beyond which its interest did not extend. There was no such seizure on its part as is deemed essential to constitute cotenancy. 4 Kent. Comm. 368; 2 Bl. Comm. 182; 1 Crew Dig. 835; 5 Bac. Abr. 240, 241, 274.

The railway company was therefore not a cotenant. Hence, it was not in a condition to demand a partition, and therefore not in a situation to demand that its improvements be set apart to it. The coal and coke company was, of course, a cotenant. It could maintain a suit for partition; and, as it had received the compensation for the right of way, it might, under ordinary circumstances, insist that the improvements be assigned to it, or, what is the same thing, to the railway company. But, whether it could or could not, is immaterial, in our view of the case; because, as said by 2 Elliott on Railroads, §934: ''The construction of a railroad across the property may have damaged it to a greater or less extent, and such damage could not be taken into account by the commissioners and charged against the interest of the grantor in effecting a partition. Indeed, it is conceivable that a tract of land of which but a small part was taken, should be damaged by the construction of a railroad across it to an amount greater than the entire interest of the tenant in common by whom alone its construction was authorized''. On the general proposition that one tenant in common can not convey to a stranger a specific portion of the common estate so as to prejudice the rights of his cotenants in the part conveyed, he cites *Shepardson* v. *Rowland*, 28 Wis. 108; *Mattox* v. *Hightshue*, 30 Ind. 95; *Marsh* v. *Holley*, 42 Conn. 453; *Jewett*

v. *Stockton, supra; Ballou* v. *Hale, supra; Gates* v. *Salmon, supra; Dennison* v. *Foster, supra; Markoe* v. *Wakeman,* 107 Ill. 251; *Good* v. *Coombs,* 28 Tex. 34.

While the cases cited involve a grant by one cotenant of a definite portion of the land and not merely an undivided interest, there is no apparent reason for distinguishing them from cases where a railroad company acquires from one cotenant a right of way by condemnation proceedings; for the grant and the condemnation, if valid, vest an absolute fee simple title in the grantee or condemnor. See *Hill* v. *Woodward,* 57 So. (Miss.) 294, 39 L. R. A. N. S. 538, in which it is said: ''No public policy of the state can be allowed to override the positive guarantees of the constitution, or divest persons of their title to property except in the way which the law provides''. Whether the right acquired by either a grant or condemnation is more than a right of way or easement, it is not now necessary to determine. What is meant is that by neither method does the grantee or condemnor of a definite portion thereby become a cotenant with other owners of the land, although it has such an equitable interest as the courts will protect.

But, in any aspect or view of the case as presented by the record, the partition made by the circuit court seems as free from objections and inequalities as any partition could have been made of land situated and located as it is. Any other partition in kind, or by a sale and distribution of the proceeds, would have had the same, if not greater inequalities. It was made by practical men, those who were freeholders, acquainted with the value of lands, familiar with the conditions surrounding the tract partitioned by them, who studied it in all its complications, made their examinations on three different occasions, and seemed disposed to weigh and consider the rights and interests of the owners, including the rights and interests of the coal and coke company and of the railway corporation.

The conclusion therefore is to affirm the decree.

*Affirmed.*