CAMDEN D. SUMMERS *v.* NETTIE SATTERFIELD *et al.*

(No. 8682)

Submitted February 16, 1938.  Decided March 22, 1938.

2

Ward Lanham, *Ward Lanham,* for appellants.
*J. Harper Meredith,* for appellees.

Fox, Judge:

At May Rules, 1937, Camden D. Summers filed his bill in the circuit court of Marion County against Nettie Satterfield and E. K. Satterfield, her husband, praying for the partition or sale of two contiguous tracts of land described in deeds as 7 4/5 acres and 6 acres, which, from the papers before us, seem actually to contain 12.114 acres, owned jointly by himself and Nettie Satterfield. The coal in said land had been conveyed to a third party and is not involved herein. The plaintiff in his bill asked to be compensated for certain improvements which, at a cost of $383.25, he avers he made on the land sought to be partitioned. The defendants answered the bill and denied that the plaintiff was entitled to compensation for improvements, or that the land could or should be partitioned in kind; but agreed that the same should be sold. The cause was heard before the court in chambers, proof taken, and the record in the chancery cause of Camden D. Summers, Administrator, against Phoebe Bunner and others, a suit to settle the estate of Mary Virginia Summers, and in which was sold her interest in the land involved herein, was, by agreement of counsel, considered by the trial judge, and is included in the record now before us. On July 24, 1937, a decree was entered in the cause by which the plaintiff and Nettie Satterfield were adjudged to be owners in common of said land, and commissioners were appointed to make partition thereof, with provision that if they should find that said property was not susceptible of partition, they should report to the court the facts upon which such con-

clusion was based. The decree also contained the following provisions:

"That the commissioners hereinafter appointed are hereby directed to assign unto the said Camden D. Summers the land on which the barn, the hog house and the chicken house are located, without charging him or his share, with the cost or value of said three buildings, unless to do so would operate in serious injury and prejudice to the other co-tenant.

" * * *

"And should the said commissioners find and report that said real estate is not partible in kind, they shall then appraise the said barn, hog house and chicken house and place a fair and reasonable present value upon each of them and as a part of their report they shall include said appraisement so made."

The defendant, Nettie Satterfield, objected to the entry of said decree, and prosecutes this appeal therefrom. She bases her objection thereto upon the provisions thereof quoted above.

Counsel for plaintiff in his brief raises a question of whether or not the decree complained of is a final decree. We think it settles the principles of the cause, in that it decrees the respective interests of the parties in the property sought to be partitioned, appoints commissioners to make partition, and gives direction as to their action thereunder. It upheld the claim of Camden D. Summers that he was entitled to compensation for the improvements placed by him upon the property by directing that he be assigned that part of the land on which the improvements had been made, if that could be done in justice to the other tenant, or, in the event the property was not susceptible of partition, laid the groundwork for the ascertainment of the amount he should be paid in cash. This court has more than once held that such a decree is one adjudicating the principles of the

cause and that an appeal may be taken therefrom. *Richmond* v. *Richmond,* 62 W. Va. 206, 57 S. E. 736; *Roush* v. *Hyer,* 62 W. Va. 120, 57 S. E. 368; *Sattes* v. *Sattes,* 117 W. Va. 483, 186 S. E. 176. We see no reason to depart from these holdings.

The principal question involved is the right of the plaintiff to be compensated for improvements which he claims he made on the property sought to be partitioned. *Ward* v. *Ward's Heirs,* 40 W. Va. 611, 21 S. E. 746, 29 L. R. A. 449, 52 Am. St. Rep. 911, is authority for the following propositions:

> (1) "Permanent improvements made by one co-parcener, without request or agreement of others are not chargeable to the others personally or upon their shares in the land; but if made by their request or agreement, they are a debt upon them, and a lien on their shares in the land."

> (2) "In partition the part improved, if it can be done without injury to others, should be assigned to the improver; but when this can not be done, the cost of improvement can not be charged to him to whom it goes."

> (3) "Where, however, the property is not susceptible of partition, and must be sold to divide the proceeds, the coparcener who made repairs and permanent improvements shall receive out of the proceeds that amount by which the property, at the date of sale, remains enhanced in value from the improvements, not their original cost."

The case from which the above quotations were taken was decided in 1895, and has not been departed from by this court. In *Alderson* v. *Horse Creek Coal Land Company,* 81 W. Va. 411, 94 S. E. 716, decided in 1917, it was held that where a co-tenant had located on a particular portion of a tract of land and had enhanced its value by making improvements, the part improved would be assigned to the person making the improvements where it could be done without injustice to other co-tenants, and

it was specifically stated that "It is the duty of the court making such a partition to cause the improvements to be assigned to the respective parties who make them, so far as it can be done consistently with an equitable partition of the estate." In *Ward* v. *Ward's Heirs, supra,* there is a clear discussion of the question by Judge Brannon which we cannot do better than quote:

> "Although it be law that one coparcener can not without consent make permanent improvements, and charge his coparcener or his share with their cost, where the estate is partible in kind, as a tract of land, how is it in the case of a house or land which is impartible in kind for any reason, so that it has to be sold in order to effect a partition, as was the case in the present instance? Is there no difference here? Circumstances alter cases. Is it right for a court of justice to sell the land greatly increased in value by the expenditure of one brother, and put the money into the pocket of another with its eyes shut to the fact that the property brought more, a great deal, by reason of the new house built by one of the brothers? Ought it not to be ascertained how much the value was enhanced by the improvement, and pay the amount of the enhancement to the one whose means produced it, and divide the balance? This is different from the case where there is division in kind. In the latter case, to charge the brother who did not consent to the improvement is to force upon him a debt he did not assent to, and to mortgage his estate with a debt which he can not pay and which will take away his patrimony. One ought not to be made a debtor without his consent; but, where the whole is to be converted into money and distributed, another principle is admissible, doing harm to no one and justice to all. The others get just what they would have received without the improvements, and the one making them is reimbursed."

In *Alderson* v. *Horse Creek Coal Land Company, supra,* Judge Ritz says:

"While a court of equity in many cases will not allow one co-tenant compensation for improvements placed upon the common property, neither will it allow the other co-tenant to take advantage of such expenditures if an equitable division of the property can be made between the parties and this result prevented. In other words, if one of the co-tenants has improved the joint property at his own expense, a court of equity in partitioning the property between them will see to it that the part upon which the improvements have been made is assigned to the party making them, without charging him with the improvements that he has placed upon it, unless to do so would prevent an equitable partition of the land. In this way he is given the benefit of the expenditures he has made, and his co-tenant is not allowed to take an unconscionable advantage of him."

However, these rights are not absolute. *Solesberry* v. *Railway Co.*, 73 W. Va. 642, 81 S. E. 985. They are conditional in the sense that they can only be applied where no injustice will result to other co-tenants. They rest upon equitable principles and not upon any statute. 47 C. J. 469, sec. 497. Not being absolute, and dependent upon equitable grounds for their assertion, it becomes necessary to inquire into the situation surrounding the claim for improvements made by the plaintiff herein. The tract of land which is the subject of this controversy was on January 4, 1930 conveyed to the plaintiff and his wife, Mary Virginia Summers, now deceased. Mrs. Summers, by her will, devised the proceeds to be derived from the sale of her interest in said land, after payment of debts, to her sisters, Phoebe Bunner and the defendant, Nettie Satterfield. This will was renounced by the plaintiff. The executor named in said will failing to qualify, the plaintiff, Camden D. Summers, was appointed administrator with the will annexed, gave bond, and qualified as such. Later, as administrator, he instituted a suit to settle her estate, and to subject her real estate, including her interest in the tract involved herein, to the pay-

ment of her debts. That suit was instituted about October, 1935, and under a decree therein, the interest of Mary Virginia Summers was sold to Nettie Satterfield in January, 1937, and in the same month conveyed to her by a special commissioner, so that Nettie Satterfield holds title to her interest in said land, not under her sister's will, but under purchase and conveyance from a special commissioner. The improvements alleged to have been made were begun in May, 1935, some two months after the death of Mary Virginia Summers, when a house located thereon was roofed, but for this work no claim is made herein. The next improvements followed in December, 1935, after the institution of the *Bunner* suit, continued until the spring of 1936, and were all completed eight or nine months before the sale of the decedent's interest in the property. The debts against the decedent's interest were ascertained and decreed after all the improvements had been made, and no claim therefor was made by the plaintiff against his wife's estate. However, we do not consider a failure to do so as important, inasmuch as claims for improvements on jointly owned property, in the absence of an agreement for payment, can only be asserted against the property itself, in a suit to partition or sell the same, or where a transfer of the title or possession is involved, and therefore a claim for improvements made after the death of the decedent should not have been allowed against her estate. The improvements were made on the sole responsibility of the plaintiff with the idea, as he says, that he was improving his permanent home, and without notice to any other interested person. When the property was sold under the decree in the *Bunner* case, he permitted its purchase by Nettie Satterfield without giving to her any notice that he had or would assert any claim against it. Under these circumstances, he contends for the entire amount of the expenditures alleged to have been made by him for improvements, regardless of whether or not they in any way enhanced the value of the property on which they were made. Furthermore, there was decreed to the plaintiff,

against the estate of Mary Virginia Summers, for taxes paid, costs of administration and funeral expense, the sum of $792.53; and when her real estate was sold, his dower interest therein, decreed to him as a gross sum in lieu of dower, was fixed at $351.69. Therefore, at the time of sale, he was a party receiving benefits therefrom, the personal representative of his deceased wife, and his relation to the property being sold such as to make it his duty to disclose any claim which might in any way affect the bidding thereon. It was his duty to speak, and he said nothing. The fact that his silence on this occasion was calculated to encourage bids for this property beyond those which might have been made had his claim been disclosed; and that the effect of such bidding under such circumstances would be to more surely provide for the payment of his decree, and increase the amount he would receive for his dower interest; made it his duty to speak, and his failure to do so deprives him of the right to assert, as against Nettie Satterfield, or against her interest in said land, any claim for improvements made by him thereon. Counsel have chosen to term this loss of right in the plaintiff as an equitable estoppel, and it is seriously contended that if it is to be treated as such, it could only be relied on where pleaded, and that there is no such pleading in this case. If it be treated as estoppel purely, we think the weight of authority is that it should be pleaded, (*Campbell* v. *Lynch*, 88 W. Va. 209, 106 S. E. 869), although there is authority for the proposition that where evidence is permitted to go into the case without objection, the failure to properly plead estoppel will be deemed to have been waived. 10 R. C. L. 842, sec. 148. But, in any event, the plaintiff was required to make out a case calling for equitable relief, and such case is not made out when it appears from the entire record that his conduct with respect to the claim now asserted was such as to mislead the party against whom he now makes his claim. He who comes into equity must do so with clean hands.

But even if the plaintiff were entitled to be compen-

sated for the improvements made by him on said property, the decree complained of would have to be reversed. The basis of any allowance must be the enhanced value of the property, resulting from the improvement and existing at the date of the sale or partition. *Ward* v. *Ward's Heirs, supra.* Here the decree only provides that the fair and reasonable present value of the improvements be reported to the court. Of what value would such a report be in ascertaining the enhancement of value to the property as of the date when it might be sold? As we conceive the situation, it would have no value whatever, and only serves to give the court information which, under no rule of equity, can be of any use in the settlement of this controversy.

The decree of the circuit court is therefore reversed and the cause remanded for further proceedings not inconsistent with the principles herein announced.

*Reversed and remanded.*