W. W. FEAMSTER *et al.* v. WAYLAND FEAMSTER *et al.*

(No. 9160)

Submitted April 9, 1941. Decided May 27, 1941.

*W. H. Sawyers,* for appellants.

*Eagle & Eagle* and *John T. Simms,* for appellees.

LOVINS, JUDGE:

W. W. and G. M. Feamster instituted this suit in the Circuit Court of Greenbrier County in 1938 to effect a partition of what is called in the record "Willow Brook Farm", the home farm of their father, S. W. N. Feamster, who died in 1915 testate and by his will devised the farm to his ten children in equal shares. By various deeds of conveyance from 1921 to 1927, W. W., G. M., A. T., C. A., and Lucile Feamster conveyed their interests in the home farm to the other five children and heirs, namely: Wayland, Anna W., Cecil H., Earl V., and Pattie H. Feamster, defendants below. Wayland Feamster died after the institution of this suit and the same was revived in the name of his widow as administratrix and the infant children. The plaintiffs below, appellees herein, acquired the interests they assert in this suit by descent from their brother, Earl V. Feamster, who died in 1937 intestate, unmarried and without issue. The final decree of partition allotted appellees a proportionate share of the home farm, based upon the inheritance from their brother, and from this

decree Lucile, Anna W., and Pattie H. Feamster prosecute this appeal.

By a modified order of June 6, 1939, the lower court decreed that Earl V. Feamster's share of the farm, including his one-tenth thereof and interests acquired by conveyance from other heirs amounted to 27/150 of the whole, and that therefore each of the other nine heirs was entitled to 1/50 of the whole. Commissioners were appointed in that order to make partition, allotting to appellees each 1/50 separately or together, and providing that no partition of the residue should be made unless requested.

The report of the commissioners was filed August 8, 1939, in which it is noted that A. T. Feamster requested that his share of Earl's interest be laid off with appellees', and the three were allotted 113 acres and 94 square rods, by metes and bounds.

Exceptions were filed by appellants and other of the heirs to this report as follows: (1) The oath of the commissioners was not taken pursuant to the modified order of June 6th; (2) the allotment was unfair and unjustified; (3) that appellees are not entitled to any part of Earl's interest because of an option to purchase same given to grantees in the deed by which appellees conveyed away their interests in the home farm; (4) that Earl's estate had not been settled before a commissioner of accounts; (5) that there could be no partition until the will of S. W. N. Feamster had been construed. Also, affidavits were filed to show that the partition was inequitable in that appellees were allotted an excessive portion of the land. Counter affidavits were filed by appellees.

An order was entered January 8, 1940, overruling all of the exceptions but that relating to the oath of the commissioners, and reserving the question in regard to the inequality of the allotment. This order also reappointed the same commissioners and required of them a proper oath, pursuant to their appointment as of January 8, 1940.

On the 15th day of May, 1940, the commissioners reported, again referring to the request of A. T. Feamster

to have his share of Earl's interest in the home farm laid off with that of appellees. This report shows a survey of the home farm as containing 532.4 acres and allots the 3/50 share therein of W. W., G. M., and A. T. Feamster as containing 128 acres and 2.5 acres of road thereon.

The appellants filed exceptions to the report of May 15, 1940, based upon lack of notice to interested parties, failure of the commissioners to go upon the land as required by the order appointing them, mistake as to the 1/50 interest allotted to the appellees and A. T. Feamster each, incorrect nature of the survey and reiterating their former exceptions.

On the 13th of August, 1940, the lower court entered the final decree, overruling appellants' exceptions, and making the allotment to appellees and A. T. Feamster as provided in the last report of commissioners. This decree also allotted and assigned to Wayland Feamster's heirs, C. A. Feamster, Pattie Feamster, Anna W. Feamster, Lucile Feamster and Cecil Feamster, the interests of the other six heirs of S. W. N. Feamster, as 401.9 acres of the home farm, the remainder thereof to be held jointly by them.

Code, 37-4-2, provides that "Any two or more of the parties, if they so elect, may have their shares laid off together, when partition can be conveniently made in that way." We believe the statute just quoted is sufficient authority for allotting the shares of W. W., F. M. and A. T. Feamster together. As to the co-owners of the 401.9 acre tract remaining, they have not prayed for a partition of their shares and hence the question of election on their part does not arise.

Appellants assign as errors the following: (1) The original bill should have been dismissed because it, with the exhibits thereto, shows that appellees had optioned their right, title and interest in the lands sought to be partitioned, the sole right remaining in appellees being a claim for the purchase price set out in the option; (2) the final report of the commissioners, confirmed by the lower court, was the same as the first report, shown by a preponderance of evidence to be inequitable; (3) no account was taken of the dower interest of Wayland Feamster's

widow; (4) the suit was instituted prematurely, eight months and twenty-one days after the death of Earl Feamster and before settlement of his estate; (5) under the allotment decreed, 3/50 of the tract of 532.4 acres is represented by 130.5 acres, while 47/50 thereof is adjudged to be only 401.9 acres, showing that the commissioners were plainly biased in favor of appellees; (6) the will of S. W. N. Feamster was not construed. These points will be taken up in the order named, with the second and fifth points considered together.

The option asserted by appellants appears in the deed dated January 5, 1927, by which appellees conveyed their right, title and interest in the home farm to five other heirs and is in the following language:

"The parties of the first part further agree that should they come into possession of Cecil or Earl Feamster's interest or that of either of them in the said home place, they will convey the same to the surviving parties of the second part thereof for a sum to be computed on the basis of the selling price of $7000.00 (seven thousand dollars) and on the terms of one-third (1/3) cash and balance in one and two years after date."

Appellants argue that appellees made no deed or attempted no conveyance in fulfilment of their obligation created thereby, while appellees contend that their efforts on at least three occasions to sell their interest to appellants were refused, this appearing in the record in the affidavit of A. M. and W. W. Feamster, filed with a copy of a letter written by counsel for appellees attempting to make sale after the institution of the partition suit. Nowhere in the record does it appear that appellants accepted these offers of appellees, and we are of the opinion that the record shows that appellants rejected and abandoned any rights they could have asserted under the option. An option agreement such as appears in this record is simply a contract by which the owner of property agrees that another shall have the right to purchase. But in order to convert such a proposal into a contract of purchase and sale, binding the parties, there must be an

acceptance or exercise of the right to purchase. *Weaver* v. *Burr,* 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94. Otherwise, there is no binding obligation on the person holding the option. In this suit we are dealing with the title to real estate as it existed when this suit was instituted, and not with alleged rights based upon an incomplete offer to transfer title to co-owners.

It should be noted that error is claimed by appellants in this first assignment in that the lower court should have dismissed the bill because it reveals the existence of the option just discussed, thereby showing on its face that appellees have no interests to assert. No demurrer or answer was made by appellants attacking the bill on this ground or raising the lack of ownership of appellees, and it was not until September 11, 1939, when exceptions were filed to the commissioners' report of August 8, 1939, that the point in regard to the option was asserted, and at that time as an attack upon the commissioners' report.

In considering whether the partition was equitable, it must be borne in mind that only in extreme cases will this Court set aside the allotment of commissioners appointed to partition land, on the ground of inequality. To justify such action in the appellate court, it must be shown that the partition has been made on wrong principles or by a very clear and decided preponderance of the evidence that a grossly unequal allotment has been made. *Henrie* v. *Johnson,* 28 W. Va. 190; *McKown* v. *McKown,* 93 W. Va. 689, 117 S. E. 557. Every reasonable presumption is in favor of the fairness of a report of partition made by commissioners, if proper on its face. *Cross* v. *Cross,* 56 W. Va. 185, 49 S. E. 129; *Solesberry et al.* v. *Virginian Railway Co.,* 73 W. Va. 642, 81 S. E. 985. To support their contention that the division is inequitable, appellants refer to numerous affidavits filed to attack the first report and the fact that 3/50, or appellees' share is decreed to be 130.5 acres, and 47/50 is decreed to be 401.9 acres. These affidavits merely state that affiants are familiar with the land and that the division is unjust. Affidavits to overthrow the report of commissioners on the ground of inequality of the division should do more than charge

the same in general and indefinite terms. The presumption in favor of the correctness of the report is so strong that it must be permitted to stand in the absence of clear proof of substantial infirmity in it. *Alderson* v. *Horse Creek Coal Land Co.,* 90 W. Va. 637, 111 S. E. 589. Appellees, on the other hand, filed affidavits in which it is pointed out that the most of their 130.5 acre tract is rough, rocky, uncultivated, swampy sandstone, covered with stumps and scrub and unfit for farming, in contrast to that portion allotted to appellants, described in the same affidavits as choice limestone farming land. In addition, the three commissioners who were appointed by the court to make partition made and filed an affidavit stating that division was made according to value of the property and not according to acreage. All in all, we do not believe that appellants have made to appear in this record anything to justify this Court in disturbing the report of the commissioners, as confirmed by the court below.

Error is assigned for the failure of the division to take into account the dower interest of Wayland Feamster's widow. As hereinbefore stated, Wayland was an original defendant in this suit and died after its institution. The widow was thereafter made a party to the suit in her capacity as administratrix, as well as the two infant children. There is nothing in the record to show that she in her proper capacity as doweress asked to have her interest set out separately.

A widow's dower interest "is not that of a cotenant, nor is it in any respect dependent upon the interest of a cotenant. It is paramount to the cotenancy and she may have it assigned irrespective of any voluntary or compulsory division made among the cotenants." Freeman, on Cotenancy and Partition, Second Edition, Section 432. "Until her dower is assigned the widow is entitled to demand of the heirs or devisees of her husband one-third part of the issues and profits of the other real estate which was devised or descended to those of which she was dowable." *Casto* v. *Kintzel,* 27 W. Va. 750; Code, 43-1-10. We see no error in permitting the dower interest of Wayland Feamster's widow to remain in the portion allotted to

defendants below and appellants, since no pleading appears herein requesting that the same be provided for, and the result of this cause cannot therefore prevent provision for the widow's dower, if in the future she desires the same.

As to the premature institution of the suit, mentioned as the fourth point of error, we believe that the rights of creditors of Earl Feamster, if any, are fully protected by Code, 44-8-5, in its reference to alienation of an estate by heirs within one year of the death of their decedent. Moreover, this point was brought into the record only by way of an exception to the reports of the commissioners, and it is not shown that the appellants and other defendants, are creditors, represent creditors, or that any creditors of the estate of Earl V. Feamster exist.

Nor do we believe there is merit in the contention that the will of S. W. N. Feamster should have been construed. Appellants do not point out anything in the will which would require construction or interpretation. We believe it to be clear and unambiguous as to the joint ownership of the home place or Willow Brook Farm.

The decree of the Circuit Court of Greenbrier County is affirmed.

*Affirmed.*